## SHARP v. KAHN et al.

## No. 1027.

Court of Appeal of Louisiana. First Circuit.

Oct. 5, 1932.

Taylor, Porter & Brooks, of Baton Rouge, for appellants.

Chas. A. Holcombe, of Baton Rouge, for appellee.

LE BLANC, J.

On June 18, 1931, an automobile being driven by Miss Julia Kahn, minor daughter of Mrs. Marion Kahn, ran into a horse which the plaintiff, Thomas Sharp, was riding. He was thrown from the horse upon the pavement, sustaining injuries to the right side of his body. Averring that the proximate cause of the accident was the reckless rate of speed at which Miss Kahn was driving, her inattention and indifferent manner of driving, her failure to warn him of her approach, and her failure to avail herself of the space south of him on the road which was amply sufficient for her to safely pass by, he asks for judgment in his petition against her mother, Mrs. Marion Kahn, and against the Ætna Casualty Company, which he alleges carried public liability insurance on her automobile, in the sum of $10,000 for his injuries, medical and other expenses, and for permanent disability. His injuries, he alleges, consisted of a broken collar bone and of bruises and cuts on the right side of his face, right shoulder, elbow, knee, and ankle. In addition, he alleges that the skin was torn from the palm of his left hand and the left side of his chest was bruised. His injuries constitute one-half of the amount he claims, or the sum of $5,000. The next largest item, one for $4,614.80 is for permanent disability with consequent diminution of earning power. The balance of the claim is made up of different items for expenses and for the value of the horse which was struck, which he alleges has not recovered and is now useless.

The suit was dismissed as to the Ætna Casualty Company on an exception of no cause of action in the lower court. Counsel for plaintiff does not press the demand against

that defendant in this court, stating in his brief that it is immaterial whether the ruling of the trial court sustaining the exception be upheld or not. We will therefore treat the suit as against that defendant as having been abandoned.

Mrs. Kahn defends the action as against her on the ground that the accident was inevitable, due to an uncontrollable and fortuitous event or vis major, and to no carelessness or reckless driving on the part of her minor daughter. In this connection, it is averred in the answer that defendant's daughter was proceeding in the car in a careful and prudent manner, traveling in the same direction as were the plaintiff and his brother, Gervais Sharp, both riding horseback, and that, as she got within reasonable distance from them; about two or three car lengths, a bee suddenly flew into the car and stung her on the thigh. She avers that her daughter became nervous and excited, losing control of the car, and that, when she regained her composure, she was so near the horse plaintiff was riding, it was impossible for her to avoid hitting it.

Without assigning reasons therefor and without itemizing the award, the lower court rendered judgment in favor of the plaintiff in the sum of $2,500. The defendant Mrs. Kahn appealed, and plaintiff has answered the appeal, asking that the amount allowed be increased to $5,000 and such further sum as the court may feel it necessary to compensate plaintiff for future disability and loss of earning power.

The evidence shows that, on the day of the accident, Mr. Sharp, his brother Gervais, and others were dipping cattle. There were six of them in a party riding horseback. They were riding along the Benton's Ferry or Hammond road, traveling west on their way to Will Sharp's place to get a drove of cattle there that had to be dipped. Plaintiff and his brother Gervais were riding together; the latter's horse being entirely on the outside of the paved surface and he right on the edge of it, on the right side of the road. It is not disputed that these two men were on the proper side of the road, plaintiff being on the extreme edge of the pavement, and that no blame or fault attaches to either of them. In fact, counsel for defendant admits, as is reported in the note of evidence, that they were not at fault. Coming behind them in an Essex coupé, at an admitted rate of speed of thirty-five to forty miles an hour, were Miss Julia Kahn, then 16 years old, and her companion, Miss Ann Schendle, aged 15. The road was perfectly straight, and there were no obstructions whatever to prevent Miss Kahn from seeing plaintiff and his brother a good distance ahead of them. As a matter of fact, Miss Schendle, seated next to her in the car, saw them a block away before the horses were hit. Notwithstanding all this, Miss Kahn tes-

tifies, on direct examination, that, when she first saw these horses in the road, she was approximately two car lengths behind them. At the very most, therefore, she did not see plaintiff and his brother until she was within twenty feet of them. When Miss Schendle is asked how could she account for Miss Kahn's not seeing them until she got that near, she says she does not know; she cannot account for it.

■ It seems evident to us that the young lady driving that car was in a listless mood, oblivious of where she was and of what she was doing. At the rate of speed she was going, her failure to have seen two men on horseback, riding ahead of her, until she was within twenty feet of them, was a failure to observe one of the very first rules of care imposed on the driver of an automobile. Such rule is expressed in Blashfield's Cyclopedia of Automobile Law, vol. 1, page 284, as follows: "An operater of an automobile is bound to anticipate that he may meet persons at any point in a public road, and, on account of the ease with which injury can result from the slightest negligence, on inattention in the operation of his machine, ordinary diligence requires that the driver be on the lookout for other travelers that he may avoid placing himself or them in peril; such rule of ordinary care, as expressed in many of the cases requires that, like a locomotive engineer, or a street car motorman, he should keep a vigilant watch ahead, and be constantly on the lookout, and his failure to keep such a lookout proximately resulting in injury to another traveler or contributing to his own injury is negligence, entailing liability or precluding recovery therefor."

Under the facts and circumstances presented in this case, therefore, Miss Kahn cannot be said to have been without fault, and her defense that she was stung by a bee and lost control of her car, even though full effect be given to her account thereof, has to be considered in connection with her negligence.

■ The rule of law which relieves a person of liability for the result of an inevitable accident is well recognized, but there is a qualification to that rule, equally well recognized, which requires the one seeking to avail himself of its protection to show that he himself was in no way to blame for the happening. From Blashfield, vol. 5, page 260, we quote the following: "An accident is inevitable if the person through whom it occurs neither has nor is legally bound to have sufficient power to avoid it or prevent its injuring another. But in order to prove that an accident was inevitable it is not always enough to show that, under the circumstances existing at the time, it could not have been then avoided. It must also be the fact that the defendant was not guilty of any negligence which brought about any of those circumstances."

In Ruling Case Law, vol. 20, page 17, in a paragraph dealing with the subject here under consideration, we read: "It has long been recognized that no action will lie for injuries attributable to what is termed inevitable or unavoidable accident. In other words, if no fault or negligence is chargeable to either of the parties to the occurrence upon which the action is founded the loss and injury will be allowed to remain where it has fallen. * * * But it is insisted that a person is in no degree absolved from liability by reason of the fact that the injury was produced by accident in combination with his own negligence. * * *"

With this positive statement of the modification of the rule before us, and, having found that Miss Kahn was negligent in the operation of the automobile she was driving, we are bound to hold that her mother cannot evade liability by invoking the doctrine of "inevitable accident."

Counsel for defendant contends as earnestly that the award of the district judge is excessive, as plaintiff's counsel argues that it is not large enough. As the award is for a lump sum, we have no means of telling how the court assessed the different items.

The most serious injury suffered by plaintiff was a fracture of the right clavicle or collar bone. His injuries otherwise, even according to his own physician, Dr. J. W. Watson, were of a "minor nature." These other injuries, as already noted, consisted of bruises and contusions about the face and the right side of the body generally. The fracture of the clavicle and all bruises and contusions had healed at the time the case was being tried, and the only remaining injury he complained of was that to the right shoulder and the right knee. There were then no longer objective symptoms of injury, and the pain and suffering plaintiff complained of was purely subjective. We believe that an award of $1500 for the broken collar bone and all other injuries, including his pain and suffering, would be in line with what has been allowed in cases of this kind, and have decided to assess those damages at that amount.

Plaintiff's claim for permanent disability has not, in our opinion, been supported by sufficient evidence. His own doctor's testimony on that point is rather indefinite. He hesitates to venture an opinion even to the extent of asking the trial judge if he is obliged to answer questions. When told that he has qualified as an expert and has to reply, he says that his opinion is that "Mr. Sharp is either left in such condition at this time that he can't use his arm in the way of riding, getting up on a horse—in other words it is painful, or else he is malingering and just telling that." Then he adds: "That is my opinion. You can judge either way." He then states that Mr. Sharp has shown considerable improvement, and there is a possibility that he will continue to improve. We do not think that we are justified under this testimony in holding that Mr. Sharp presents a case of permanent disability. Moreover, had we more evidence before us concerning disability, we find that, with what testimony there is about plaintiff's earnings for the few years before his injury, it would be almost impossible to determine with enough certainty what his earning capacity was.

All other items of damage save the value of the horse, which is alleged to be useless, have been sufficiently proven, and will be allowed. These consist of $158.70 for hospital, nurses', medical, and doctor's bills, $40 for two X-ray examinations, and $36.50 for veterinary service to the horse. Plaintiff claimed $150 as the value of his horse. There is enough evidence to show that the horse is no longer of any use. One witness, J. L. Campbell, says that, if it was his, he would sell him for 15 cents, and another, Joe Sharp, says that he would not give anything for it in its present condition. The highest value placed on the horse before it was hurt, however, is $100, which amount will be allowed, instead of $150, as asked for by plaintiff.

The different amounts here allowed aggregate the sum of $1,835.20 as compared to $2,500 under the judgment of the lower court. The judgment will therefore have to be amended.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by decreasing the amount allowed from the sum of $2500 to the sum of $1835.20, and that, as thus amended, it be affirmed.