640 So.2d 596 (1994)
Curtis WELCH, et ux, Plaintiffs-Appellants,
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, et al., Defendants-Appellees.
No. 93-1134.
Court of Appeal of Louisiana, Third Circuit.
May 4, 1994.
*597 Joseph B. Stamey, William L. Townsend III, Natchitoches, for Curtis Welch et ux.
Ted David Hernandez, Natchitoches, for State, Dept. of Transp. and Development.
Billy Lynn West Jr., Natchitoches, for LIGA.
Before GUIDRY, C.J., and DOUCET and COOKS, JJ.
GUIDRY, Chief Judge.
Three suits, arising out of a two vehicle accident, were consolidated at the trial level. They remain consolidated on appeal. The facts and law common to all three will be considered herein, however, we will issue separate judgments in appeals numbered 93-1135Michael Lynn Carter v. State of Louisiana, Department of Transportation and Development, et al, and 93-1136Richard Dale Vercher, et ux v. State of Louisiana, Department of Transportation and Development, et al.
Plaintiffs, Curtis Welch, et ux, Michael Lynn Carter and Richard Dale Vercher, et ux, appeal a judgment of the trial court dismissing their claims against defendants, the State of Louisiana, Department of Transportation and Development (DOTD), Sam Parrie (employee-truck driver), John Jeter (his employer and owner of the truck), Laramie Insurance Company (Jeter's insurer) and the Louisiana Insurance Guaranty Association (LIGA, the successor to Laramie). We affirm.

FACTS
The suits arise out of a two vehicle accident on Louisiana Highway 6 on the Grand Ecore Bridge over the Red River in Natchitoches Parish which occurred at approximately 6:00 a.m. on January 8, 1990.
Two significant events preceded the accident. First, sometime between 5:30 a.m. and 6:00 a.m. there was a one car accident when Shana Poston lost control of her car upon encountering ice on the Grand Ecore Bridge. Her vehicle, which was originally headed east, came to rest in the opposite direction at the east foot of the bridge, on the westbound shoulder of the road, entangled with a road sign. Ms. Poston stated that she had no warning, as she had not encountered any ice earlier on her drive from Hornbeck.
The second event occurred shortly thereafter. Neil Bennett, a DOTD supervisor, was also traveling easterly on Highway 6 that morning. After crossing the Grand Ecore Bridge without difficulty, he discovered the wrecked Poston vehicle. Bennett stopped to inquire if anyone was injured and then immediately *598 proceeded down the highway to a roadside store where he made two telephone calls, one to the Natchitoches Parish Sheriff's Office to report the Poston accident and request traffic control units and the second to the Natchitoches Parish DOTD barn for a crew to place sand on the bridge. After speaking to Doug Brossett, the DOTD road maintenance supervisor for Natchitoches Parish, Bennett returned to the Grand Ecore Bridge. Shortly thereafter, the accident at issue happened.
The accident giving rise to these suits occurred on the eastern half of the Grand Ecore Bridge. According to testimony at trial, the bridge is unique in construction in that the western end is significantly higher in elevation than the eastern end. The bridge joins Natchitoches on the west side of the Red River with Clarence on the east side of the river. At the point the bridge spans the river, the roadway actually runs in a north-south direction with the north end of the bridge being on the west bank of the river. Additionally, as the roadway crosses the river from north to south, it makes a curve to the east (left). Accordingly, it is not possible to see one end of the bridge from the other.
The accident happened at approximately 6:00 a.m. when eastbound driver, Sam Parrie, who was operating a 1975 Mack truck with an empty trailer, both owned by John W. Jeter, encountered ice on the bridge. When Parrie encountered ice on the bridge, his vehicle became uncontrollable, it jack-knifed and started sliding down the bridge. Meanwhile, Curtis Welch, who was proceeding westerly with two passengers in his 1980 Pontiac, Michael Carter and Richard Vercher, also encountered ice on the bridge. Curtis, whose vehicle was headed up the incline of the bridge, testified that he immediately took his foot off the accelerator and had just about stopped when the tractor-trailer slid into his car. The two vehicles slid approximately 24 feet back down the bridge after impact.
No one who testified had encountered any ice on either the highway or any other bridge before they came to the Grand Ecore Bridge. Before being notified at approximately 5:45 a.m. of the Poston accident, the Natchitoches Parish Sheriff's Office had received no reports that morning of ice on any bridge or roadway. The Parrie-Curtis accident occurred between 6:00 and 6:05 a.m. and was reported to the authorities at 6:11 a.m. By 6:30 a.m., the DOTD road crew had arrived on the scene and had placed sand on the bridge.
Sam Parrie, the driver of the tractor-trailer, estimated his speed upon beginning to traverse the bridge at between 15 and 25 miles per hour. The speed limit on the bridge was 50 mph. Trooper Earl Townsend, who investigated the accident, testified that because of icing on the bridge, there were no skid marks and that because of the icing and the downward slope of the bridge at the point of impact, there was no way to tell the speed of either vehicle at the time of or just preceding impact. Trooper Townsend further testified that his investigation revealed no violations by either driver and, based upon his investigation, no citations were issued to either driver.
Plaintiffs, Curtis Welch and his two passengers, Michael Carter and Richard Vercher, urge that Parrie was negligent in exceeding a safe speed for the prevailing roadway conditions. Carter estimated Parrie's speed at 35 to 40 mph; Vercher at 35 to 45 mph; while Welch could give no estimate, just stating that the truck hit them hard as it crossed the center line. Plaintiffs urge negligence on the part of DOTD in that Neil Bennett did not close the bridge upon discovering the Poston accident. Further, they urge that Bennett should have, in some way, warned approaching vehicles of the previous accident. Finally, they urge that the corrective measures taken by DOTD were not timely.
The trial judge found no negligence on the part of either Sam Parrie or DOTD. Plaintiffs appealed.

LAW
The Standard of Appellate Review
The standard of review which we must apply in examining the factual conclusions of a trier of fact was scrupulously set out by our Supreme Court in Rosell v. ESCO, 549 So.2d 840 (La.1989), and recently reiterated in Stobart *599 v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993), wherein the court stated:
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). This court has announced a two-part test for the reversal of a factfinder's determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
... [T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one.
. . . . . .
Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. Esco, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45. Nonetheless, this Court has emphasized that "the reviewing court must always keep in mind that `if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" Housley v. Cerise, 579 So.2d 973 (La.1991) (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
We have examined the record in light of these principles and make the following findings on the issues raised.
Plaintiffs' Case against Sam Parrie, John W. Jeter and LIGA
The trial court found no evidence of unsafe driving and no negligence on the part of Parrie. Appellants argue this was clear error since the accident admittedly happened in their lane of travel and two plaintiffs testified that Parrie was driving faster than Parrie claimed to have been traveling.
In Simon v. Ford Motor Company, 282 So.2d 126 (La.1973), our Supreme Court stated:
It is well established in Louisiana that when a collision occurs between two vehicles, one of which is in the wrong lane of travel, there is a presumption that the driver in the wrong lane was negligent, and that the burden is on him to show that the collision was not caused by his negligence. (citations omitted)
And in Mansour v. State Farm Mutual Automobile Insurance Company, 510 So.2d 1305 (La.App. 3rd Cir.1987), this court observed:
A duty is imposed on the driver of a motor vehicle by La.R.S. 32:64(A) not to drive a vehicle at a speed greater than is reasonable and prudent under the conditions and potential hazards then existing, having due regard for, among other things, the surface of the roadway. See also Beauregard v. Salmon, 205 So.2d 634 (La. App. 2nd Cir.1967). This duty is owed to other motorists, pedestrians, and to passengers in the driver's vehicle.
The trial judge found no negligence on the part of Parrie, finding the accident unavoidable because of the presence of ice on the bridge. While not specifically stating it to be the case, it is obvious that the trial judge relied upon the doctrine of unavoidable or inevitable accident to exculpate Parrie from any negligence.
The Louisiana Supreme Court addressed the doctrine of inevitable accident in Seals v. *600 Morris, 410 So.2d 715 (La.1982), wherein it explained:
As a general rule, the doctrine of "unavoidable or inevitable accident" relieves a person of liability. The person invoking the protection of the doctrine, however, must also show that he himself was in no way to blame for the happening. Sharp v. Kahn, 143 So. 514 (La.App. 1st Cir.1932). The doctrine of unavoidable or inevitable accident can be stated as follows:
As a corollary of the rule for determining legal responsibility for negligence, if a motorist or other traveler has exercised ordinary care as required by the common law (or the highest degree of care as may be required), and has nevertheless been the occasion of inflicting injury on another, the accident is said to be inevitable, for which no liability attaches. Unavoidable accident is not an affirmative defense but merely negatives negligence.
....
The mere fact that as to a motorist a collision might have been inevitable or unavoidable at the time of its occurrence will not entitle that motorist to the protection of the doctrine of unavoidable accident if the situation thus brought about was the result of the motorist's own negligence.
2 Blashfield, Automobile Law and Practice § 101.13 (rev. 3d ed. 1979). See also 7A Am.Jur.2d, Automobiles and Highway Traffic § 397; 60A C.J.S. Motor Vehicles § 256.
One instance in which the unavoidable or inevitable accident doctrine can be invoked is where an accident happens due to an "Act of God". In Gabler v. Regent Development Corporation, 470 So.2d 149 (La.App. 5th Cir. 1985), our brethren of the Fifth Circuit, in addressing an "Act of God" defense, stated at 151:
... [I]n Rector v. Hartford Acc. & Indem. Co. of Hartford, Conn., 120 So.2d 511, 515 (La.App. 1st Cir.1960), "act of God" was defined as follows:
"`An Act of God is an unusual, extraordinary, sudden, and unexpected, manifestation of the forces of nature which man cannot resist. The fact that no human agency can resist an Act of God renders misfortune occasioned solely thereby a loss by inevitable accident which must be borne by the one upon whom it falls ...
"`No one is liable for an injury proximately caused by an Act of God, which is an injury due directly and exclusively to natural causes, without human intervention, which could not have been prevented by the exercise of reasonable care and foresight. The application of this rule may preclude any recovery for injuries caused by extreme weather conditions....
"`An act which may be prevented by the exercise of ordinary care is not an act of God.'"
In the matter sub judice we are faced with damages caused by extreme weather conditions.
They went on to explain at 152 that:
It is not every "act of God" however that will relieve a defendant of liability. When an injury is due directly and exclusively to natural causes, without human intervention, an "act of God" will provide insulation from liability for a defendant. When an "act of God" combines or concurs with the negligence of a defendant to produce an injury, the defendant is liable if the injury would not have resulted but for his own negligent conduct or omission. Rector, supra.

Not every act or omission of negligence on the part of the defendant, when combined with an "act of God", will produce liability. Rector, supra, at pages 513-514 states:
"The concurring negligence which when combined with the Act of God produces the injury must be such as is in itself a real, producing cause of the injury, and not merely fanciful or speculative or microscopic negligence which may not have been in the least degree the cause of the injury. In other words, if the Act of God is of such an overwhelming and destructive character as by its own force, and independently of the particular *601 negligence alleged or shown, to produce the injury, there is no liability, although there is some negligence. * * * If the injury was caused by some extraordinary or unusual natural force or condition that could not have been foreseen, or that would have caused the injury if there had been no negligence, the negligence is not the proximate cause of the injury."
The evidence in the case before us established that Parrie was a careful driver who was known for not proceeding at excessive speeds. He testified that he had a lot of respect for the Grand Ecore Bridge and always crossed it cautiously, slowing under the best driving conditions. He estimated his speed onto the bridge at not more than 25 mph, or one-half the speed limit. While this was contradicted by the passengers in the Welch vehicle, the trial judge apparently chose to believe Parrie.
Considering the speed of Parrie and the fact that he had no prior warning of the icy condition of the bridge, we find no clear error in the trial court's conclusion that there was no negligence on his part. The trial court concluded that Parrie's unexpected encounter with ice on the bridge was the sole cause of the accident. We can find no clear error in this conclusion.
Plaintiffs' Case Against DOTD
The case of Gaspard v. State, Through the Department of Transportation and Development, 596 So.2d 336 (La.App. 3rd Cir.1992), writ denied, 600 So.2d 664 (La.1992), also dealt with ice on a bridge in Natchitoches Parish. In finding the State not liable for plaintiffs' damages, a panel of this court explained thusly:
The State owes a duty to the motoring public to maintain highways in a reasonably safe condition and remedy conditions which make a roadway unsafe. The duty of the State to maintain highways in a reasonably safe condition arises from knowledge of an unsafe condition of the highway. Before the State may be held liable for an accident caused by a hazardous or dangerous condition of a highway, it must be shown that the State had actual or constructive notice of the condition and a sufficient opportunity to remedy the situation or at least warn motorists of its presence, and failed to do so. Naylor v. Louisiana Department of Public Highways, 423 So.2d 674 (La.App. 1st Cir.1982), writ den., 427 So.2d 439 (La.1983), writ den., 429 So.2d 127 & 134 (La.1983).
La.R.S. 9:2800 sets forth when a public entity may be held for damages under La.C.C. art. 2317 as follows:
"A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
C. Constructive notice shall mean the existence of facts which infer actual knowledge."
Therefore, in order for plaintiffs to recover damages from DOTD, it must be shown that DOTD had actual or constructive knowledge of the ice on the Bayou Julian Bridge prior to the accident, that DOTD had a reasonable opportunity to remedy the situation, and that DOTD failed to do so.
While the State admitted that it had knowledge of ice on the Grand Ecore Bridge before the Parrie-Welch accident, it maintained, and the trial judge found, that DOTD had not had a reasonable opportunity to remedy the situation.
The record establishes that the Poston accident was reported to the Natchitoches Parish Sheriff's Office at 5:45 a.m. It was reported by Neil Bennett of DOTD. Therefore, Bennett's call to Brossett, putting into gear the sanding operation, had to have been made within minutes of 5:45 a.m. The Parrie/Welch *602 accident was reported to the sheriff's office at 6:11 a.m. Estimates in the record put the time of the Parrie-Welch accident at 6:05 a.m. Thus, the DOTD barn had only about 20 minutes notice of the first accident before the second accident occurred. The trial judge found no negligence under these circumstances. We find no error in this conclusion as obviously DOTD did not have a reasonable opportunity to remedy the defect.
Further, we find no negligence on the part of Neil Bennett for which DOTD would bear responsibility. Appellants argue that the trial court erred in finding no negligence on the part of Neil Bennett for not taking action to warn traffic of ice on the bridge and/or for not closing the bridge upon discovering its iced condition. Bennett's vehicle had two small amber lights on its top. There is conflicting testimony as to whether these lights had been activated at the time of the Welch-Parrie accident. However, there is uncontradicted testimony that the Poston vehicle had its emergency flashers activated after its mishap. The same two witnesses who claimed Bennett's flashers were not on, also failed to see the Poston vehicle's lights. Accordingly, we find no clear error in the trial judge apparently finding Bennett's vehicle flashers were indeed operating.
As to whether the bridge should have been closed, both Bennett and Trooper Townsend testified that one person cannot "close" a bridge and only under extreme conditions, such as a bridge being washed out, would they even attempt such action.
Further, we find appellants' interpretation of Bennett's testimony, for the most part, a mischaracterization. Our reading of his testimony does not reveal he told the Postons that he was out to check roads and bridges that morning, as appellants claim, but rather, we find his testimony to indicate that he was on his way to Grant or Winn Parish on DOTD business and his checking of roads and bridges for unsafe conditions was something he did whenever he traveled from one point to another, just as a routine part of his job.
In sum, we find nothing in the record which would support a finding that the trial judge was clearly wrong in finding Neil Bennett was not negligent.
For these reasons, the judgment of the trial court is affirmed at appellants' cost.
AFFIRMED.