482 So.2d 60 (1986)
Rosina Breaux MEYERS
v.
Kenneth L. SMITH, Dobbs, Leasing, Inc., Aetna Casualty and Surety Co., Brooks Products, Inc. and State Farm Mutual Automobile Insurance.
No. 85-CA-380.
Court of Appeal of Louisiana, Fifth Circuit.
January 13, 1986.
*62 Joseph R. DePaoli, New Orleans, Pierre Gaudin, Gretna, for plaintiff-appellant.
Gerald J. Talbot, William S. Penick, C. Gordon Johnson, Jr., New Orleans, for defendants-appellees.
Before CHEHARDY, KLIEBERT and DUFRESNE, JJ.
DUFRESNE, Judge.
This is an appeal by Rosina Meyers, plaintiff-appellant, from a jury verdict awarding her damages in a wrongful death action against Kenneth Smith, Brooks Products, Inc., and Aetna Casualty and Surety Co., defendants-appellees. She seeks here an increase in the award. Because we find no reversable errors in the proceedings, we affirm.
Mrs. Meyers' husband, Errol, was killed when his car was struck by a pick-up truck driven by Kenneth Smith. The evidence showed that the accident occurred as follows. On the evening of April 1, 1981, at about 9:20 P.M., Errol Meyers, his wife Rosina, and Wayne and Sylvia Kimball, were on the way to a restaurant located on Highway 51 between LaPlace and the I-10 interchange. To reach the restaurant from the Kimball's house, where the party set out, Errol Meyers had to drive for a distance on Airline Highway and turn north onto Highway 51, a two lane road. Shortly after making this turn, Meyers found himself behind another car, driven by Terri Colangelo, which was traveling slower than the 40 M.P.H. speed limit. Because he did not know exactly where the restaurant was, he apparently decided not to pass this car, but rather began to follow it closely. It also appears that a rust or maroon colored car caught up to the Meyers vehicle and began following it.
When the Meyers party reached the restaurant, which was on the left side of the road, they noticed that it was closed and poorly lit. When they made this observation, Errol Meyers had already passed two of the three driveways into the restaurant parking lot, and he attempted a left turn into the third. Just as he began this turn, a pick-up truck driven by Kenneth Smith and traveling in the same direction as the Meyers' car, pulled into the left lane to pass the three slow moving vehicles. The truck struck the Meyers' car as it turned into the left lane, and Errol Meyers was pronounced dead several hours later in the hospital emergency room.
The jury found that the accident was caused by the negligence of both Errol Meyers and Kenneth Smith and apportioned 70% of the fault to Meyers and 30% to Smith. They awarded damages as follows:

1. Loss of Support $200,000
2. Loss of Love and Affection,
 Society, Comfort & Consortium 25,000
3. Rosina Meyers Mental Anguish,
 Distress and Grief 10,000
4. Rosina Meyers Psychiatric and
 Psychological Expenses, Past
 and Future 7,000
5. Pain and Suffering of Errol
 Meyers until his death 10,000
6. Medical Expenses for Errol
 Meyers 2,500

Items 1 through 6 were reduced by 70% to account for Errol Meyers' percentage of negligence. The remaining 30% of items 5 and 6 was further reduced by 75% because Errol Meyers was survived by three children as well as Rosina Meyers, and her share of items 5 and 6 was therefore 25%. The total award to Mrs. Meyers came to $73,567.50.
Mrs. Meyers now appeals, alleging that the percentages of fault, as well as the amounts of damages in items 2, 3 and 4, above, were manifestly erroneous. She *63 also urges that she was prejudiced by certain procedural and evidentiary rulings by the trial court.
As to the jury's factual determination that Errol Meyers was 70% at fault in causing the accident, the standard of review here is whether that finding was manifestly erroneous, Thomas v. Missouri-Pacific R. Co., 451 So.2d 1152 (La.App. 3rd Cir.1984). We find no such error here.
There is no dispute that when Smith pulled out into the left lane to pass he was traveling about 60 M.P.H. in a 40 M.P.H. speed zone. There was no oncoming traffic, and except for Errol Meyers' left turn, the passing could have been accomplished safely. Smith attempted to show by testimony of an accident reconstruction expert that even had he been traveling at the 40 M.P.H. speed limit, he still would not have been able to avoid the accident. Mrs. Meyers' expert, on the other hand, testified that Smith would have been able to stop, or at least minimize the impact, had he not been speeding. It is apparent that the jury was persuaded that Smith's speeding was causally related to the accident because they found him at fault.
The key issues as to Meyers' negligence are whether he used his turn indicator before turning and properly ascertained that it was safe to turn. Smith testified that he could see the left tail light of Meyers' car when he moved into the left lane to pass, and the turn indicator was not on. Wayne and Sylvia Kimball, riding in the back seat of Meyers' car, did not know one way or the other. Mrs. Meyers stated that she heard the ticking of the indicator for perhaps one minute before impact. Terri Colangelo, the driver of the car ahead of Meyers, said that the signal was not on. She further noted that when Meyers first came up behind her, he was "tailgating" her car. Because she was alone, she became apprehensive and slowed down to permit Meyers to pass. When he also slowed behind her, she felt that he was driving erratically, and continued to watch him in her rear view mirror. She stated that she saw the actual impact in her mirror, and that at no time were Meyers' signal lights flashing.
Also, the testimony of Mrs. Meyers and Sylvia Kimball was that Errol Meyers did not know where the restaurant was, and that when they noticed that it was closed, they had already passed at least the first driveway into the parking lot. The jury apparently inferred from this evidence that Errol Meyers was not attentive to his driving, and when he saw the third driveway, he turned quickly toward it without ascertaining whether it was safe to do so.
Based on these facts, the jury fixed liability at 30% for Smith and 70% for Meyers and in this court's opinion these figures are not manifestly wrong.
Mrs. Meyers next contends that the awards of $25,000 for loss of love, affection, society, comfort and consortium, and $10,000 for grief, are so low as to constitute an abuse of the jury's discretion. The rule for reviewing damage awards made by the trier of fact is that appellate courts may not disturb such awards unless the record discloses a clear abuse of discretion, Reck v. Stevens, 373 So.2d 498 (La. 1979). We have carefully reviewed the individual circumstances of the present case, and although we find these awards somewhat low, we are unable to articulate any reasons why they are so low as to constitute an abuse of the jury's discretion.
Mrs. Meyers also alleges that the award of $7,000 for psychiatric treatment should be raised here. The question presented is whether special damages for medical expenses occassioned by the grief and anguish of a survivor in a wrongful death action are compensable under La.Civ. Code art. 2315. This issue was recently addressed in Lang v. Prince, 447 So.2d 1112 (La.App. 1st Cir.), writs denied 450 So.2d 1309 and 450 So.2d 1311 (La.1984). There, the court declined to award special damages to the survivor for medical costs and lost wages, holding that only general damages are compensable in a survivor's action. We find that this case correctly sets forth the law applicable here, and that *64 we are therefore prohibited by law from awarding an increase to Mrs. Meyers for past and future psychiatric treatments. We note, however, that because the appellees did not contest the $7,000 jury award, by cross-appeal, or answer to this appeal, we are precluded from reversing that award here.
The next issue is whether the trial court properly excluded evidence concerning Errol Meyers' possible future ownership of stock in a corporation, and the profits of that corporation as an element of lost future income. At the time of his death, Meyers was employed by LaPlace Concrete, Inc., the major stockholder of which was Wayne Kimball. Kimball testified that he had made a verbal offer to Meyers whereby the latter could acquire 25% of the corporation's stock. However, at the time of Meyers' death, no price had been fixed for the stock, no specific date for the transfer had been set, and there was no showing in the proffered testimony and evidence on this issue that Meyers had the means to acquire the stock. On this showing, the trial judge concluded that Meyers' potential future ownership of the stock and consequent share in corporate profits was too speculative an item of damages to even be considered by the jury. We agree.
The often stated rule as to loss of future profits is that they must be proved with reasonable certainty, Borden, Inc. v. Howard Trucking Co., Inc., 454 So.2d 1081 (La.1983). Although the precise issue here is not proof of the future profits of LaPlace Concrete, but rather whether Meyers had any interest in those profits, we nonetheless find applicable the law as stated in Borden, supra. On the record before us, we can only conclude, as did the trial judge, that a tentative offer to sell stock to Errol Meyers at an undetermined price and at an unspecified future date, is so totally speculative that it could not legally form a basis for an award to his survivor for lost future profits from that corporation.
The next assignment of error relates to the jury charges. Our review of the given charges discloses no mistatement of the law. Further, those portions of the plaintiff's requested charges which were not given were either included in the judges' charges, or not correct statements of the law. We also point out that appellants' arguments about "sudden emergency" and "unavoidable accident" are not pertinent. The "sudden emergency" doctrine is invoked only when a defendant attempts to show that his action on being confronted by an emergency situation, although not the best or most reasonable one on reflection, was nonetheless reasonable under the circumstances. On the facts of this case, this doctrine has no application, and no jury instruction was called for, because the evidence showed that when the emergency arose, it was too late for Smith to swerve, or even apply his brakes so as to prevent the accident.
The "unavoidable accident" concept applies when a defendant attempts to show that an incident occurred not because of his negligence or fault, but rather because some external force or circumstance over which he had no control caused the accident. When the doctrine is applied, it results in a finding of no negligence. Here, the jury found Smith negligent, and they therefore rejected the "unavoidable accident" concept. Thus, even if it were considered error for the trial judge not to have instructed the jury on this point, that question is now moot.
The final allegation of error here is that it was prejudicial to admit into evidence a photograph of Meyers' car upon which a red circle had been drawn around the left rear taillight. We find nothing prejudicial in this photograph.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.