—ypEATROSS, J.
Plaintiffs, John Lara and his father, Vic-torino Lara, appeal from a judgment rejecting their claims for personal injury and property damage against Defendants, Teresa Knotts and State Farm Insurance Company (“State Farm”). For the reasons stated herein, we affirm.
FACTS
This lawsuit concerns an automobile accident which occurred on Highway 80 in Bossier Parish near the Interstate 220 overpass. At approximately 2:00 a.m. on October 3, 1998, John Lara was driving his father’s pickup truck eastbound on Highway 80. The eastbound section of Highway 80 is five lanes wide at this point, but the inner and outermost lanes are “turn-only” lanes. It was raining as Mr. Lara stopped his truck near the traffic light at the intersection of Highway 80 and the entrance to Louisiana Downs. Witnesses testified that Mr. Lara’s truck was stopped in the right lane of the three through lanes, although the police report of the incident shows the vehicle in the center lane.
Mr. Lara testified that his truck has a manual transmission and that, when he stopped for the traffic light, he put his truck in neutral and let the clutch out in order to rest his leg because he had recently had knee surgery. Mr. Lara further testified that, when the traffic light in his favor turned green, he put the truck into first gear and attempted to pull away, but the truck stalled. He stated that, when the truck stalled, its headlights and interior lights went out; and he.indicated that his brake lights might have gone out as well. The pickup truck’s original tailgate was not on the vehicle; instead, it was equipped with a barred tailgate. The truck’s bumper was chromed, but the bed was lined with a black liner.
In the meantime, Ms. Knotts was driving herself and two companions eastbound on Highway 80 toward the traffic light. Ms. Druscilla Mason, one of Ms. Knotts’ passengers, testified that it was “pouring down rain.” The posted | ?speed limit was 45 miles per hour and Ms. Knotts estimated her speed to be 40 to 45 miles per hour. Ms. Knotts testified that her headlights *243 and windshield wipers were on and she first saw Mr. Lara’s truck when she was about one and one-half car lengths away from it. Ms. Mason shouted, “Truck!” and Ms. Knotts braked as hard as she could, but was unable to avoid hitting the truck. The collision was of sufficient severity to trigger the release of the front airbags in her vehicle.
Regarding the visibility at the crash site, Ms. Knotts testified:
[I]t’s a dark area right there where ... the accident happened. I mean, it was right underneath the — right after you go underneath that overpass. And there’s — it’s just a dark spot there. Now there is a street light on down. But half the time that street light is not even on.
Bossier City Police Officer Cordell Williams, who investigated the accident, testified that the street light illuminating the intersection was operational at the time of the accident; this light is to the north of the whole of Highway 80, not in the median between the east and westbound lanes. Officer Williams’ report reflects that the accident “occurred on U.S. Hwy 80 ... relative to its intersection with 150 feet [West] of 1-220.” Witnesses differed as to how dose Mr. Lara’s truck was to the traffic light and some said that his truck was well back from the entrance to Louisiana Downs.
Witnesses also differed regarding Mr. Lara’s statements after the accident. Mr. Lara said that the crash happened just after his truck stalled. He stated he had just leaned forward to turn the key in the ignition when the impact occurred. Mr. Lara also stated that he first got out of his truck after the crash to see if the occupants of the other car were hurt. To the contrary, Ms. Knotts testified that Mr. Lara told her that, after the truck stalled, he had been “fool[ing] with the cables” on the truck trying to get it started and that “he knew something like this was probably going to happen.” Ms. Mason said that Mr. Lara told her, “I was 13afraid that was going to happen. That’s the reason I got out of the truck;” she also said that Mr. Lara was quite wet from the rain.
Mr. Lara went home after the accident, but testified that he went to the emergency room the next day because he had shooting pains in his neck, arm and shoulder. At the hospital, Mr. Lara’s back and chest were x-rayed. Mr. Lara did not relate that he received any treatment at the emergency room. He first saw Dr. Robert Holiday, his family physician, with complaints of pain on October 14, 1998, and returned two or three times for pain in his neck and arms. Dr. Holiday prescribed pain medication, exercise and a hot pack; and by February 8, 1999, Mr. Lara needed no further treatment.
On January 27, 1999, John Lara filed suit against Ms. Knotts and her insurer, State Farm, seeking damages for his personal injuries. Victorino Lara, the owner of the truck, sued Defendants for the property damage to his truck.
After hearing all of the testimony, the trial court rejected Plaintiffs’ claims. The trial court found that the principal cause of the accident was the presence of Mr. Lara’s stalled and unlit vehicle in the roadway under poor visibility conditions. The trial court stated that Ms. Knotts had a responsibility to drive her vehicle at a speed appropriate for the driving conditions, but said that there was no evidence she was driving at an improper speed. From the judgment rejecting their claims, Plaintiffs now appeal.
DISCUSSION
An allocation of fault is a factual determination subject to manifest error review. A court of appeal may not set aside a finding of fact in the absence of clear or manifest error. Boggs v. Voss, 31,965 (La.App.2d Cir.6/16/99), 741 So.2d 139.
In Clark v. Natt, 32,548 (La.App.2d Cir.12/8/99), 748 So.2d 584, writ denied, 2000-0084 (La.3/17/00), 756 So.2d 1142, this court set forth the applicable law *244 concerning the duty imposed upon Ms. Knotts:
La. R.S. 32:81 imposes a duty on a motorist not to follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and condition of the highway. A following motorist in a rear-end collision is presumed to have breached this duty; accordingly, there is a rebuttable presumption that he is negligent. Boggs v. Voss, 31,965 (La.App.2d Cir.06/16/99), [741 So.2d 139].
And, even though a motorist may assume that the road ahead is safe for travel, he must, when traveling after darkness, or in circumstances of limited or impaired visibility, observe and so control his vehicle as to avoid discema-ble objects in his path of travel; that is, in adverse conditions, a greater degree of care must be exercised. This rule, however, is subject to the well-established exception that a night driver is not charged with the duty of guarding against unusual or unexpected obstructions which he had no reason to anticipate he would encounter on the highway and which, under the circumstances, are difficult to discover. Jackson v. Scott Truck & Tractor, Inc., 31,933 (La.App.2d Cir.05/05/99), 736 So.2d 987.
Under the sudden emergency doctrine, one who finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or the best means to adopt in order to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to be the better method, unless the emergency is brought about by his own negligence. Jackson, supra. Said another way, if a motorist has exercised ordinary care as required by law (or the highest degree of care as may be required), and has nevertheless inflicted injury on another, the accident is said to be inevitable, for which no liability attaches. Welch v. State, DOTD, 93-1134 (La.App. 3d Cir.05/04/94), 640 So.2d 596, writ denied, 94-1452 (La.09/23/94), 642 So.2d 1293. (Emphasis added.)
Applying these standards to the facts at hand, we find no manifest error in the trial court’s conclusion that Ms. Knotts was free from fault. As the court noted, there was no evidence that Ms. Knotts was driving her vehicle too fast for the conditions; the mere fact of the accident is insufficient to warrant such a finding. Testimony supports the trial court’s finding that, despite the chrome bumper and Ms. Knotts’ reasonable care, Mr. Lara’s unlit truck was not perceptible under the prevailing weather and lighting conditions.
I sLa. R.S. 32:141 provides, in part:
A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.
B. The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic.
C. The driver of any vehicle left parked, attended or unattended, on any highway, between sunset and sunrise, shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence. (Emphasis added.)
*245 [[Image here]]
Although the trial court made no specific findings regarding the length of time Mr. Lara’s truck was stopped before the accident, we observe that this law is designed to protect motorists in Ms. Knotts’ position. The legislature has recognized the extraordinary danger posed to motorists on a dark highway by a stalled and unlit vehicle in the right-of-way. Accordingly, the legislature has specifically imposed upon a stalled motorist the duty of protecting traffic. Since Ms. Knotts’ headlights were operating, Mr. Lara was in a position where he could see Ms. Knotts approaching and possibly warn her of the presence of his stalled truck. Even if Mr. Lara had no time to do so, the fault for this accident cannot be shifted to the driver who had little or no opportunity to see the obstacle in the right-of-way. As to Ms. Knotts, this is simply an inevitable accident for which no fault attaches.
| .CONCLUSION
For the foregoing reasons, the judgment of the trial court rejecting the claims of Plaintiffs, John and Victorino Lara, is affirmed. Costs are assessed to Plaintiffs, John and Victorino Lara.
AFFIRMED.