|, STEWART, J.
The issues presented in this appeal arise from a judgment finding Kansas City Southern Railway Company (“KCS”) one hundred percent liable for damages due its employee, Richard Perot, who was injured when a co-worker slammed a door on his hand just prior to a collision with an automobile. The automobile, which was driven by Anthony Danna, was stranded adjacent to the railroad track after colliding at the crossing with another automobile, which was driven by Stanley King. For the reasons set forth herein, we reverse the judgment of the trial court and assess liability to the drivers of the automobiles, Stanley King and Anthony Danna. We remand for further proceedings to determine whether Perot sustained compensable injuries in the accident at issue.
FACTS
The incident at issue occurred on January 19, 1996 at about 11:30 a.m., at the intersection of DeSiard and North 6th Streets in Monroe, Louisiana. Anthony Danna was driving northbound on North 6th Street. Stanley King was driving westbound on DeSiard Street. At the same time, a KCS train consisting of two locomotives and three freight cars was westbound through the KCS yard in Monroe. The speed limit through the yard was 10 miles per hour. KCS’s track ran roughly parallel to DeSiard and traversed the intersection at an angle. Crossing *761 lights flashing red were operating and visible to traffic on both DeSiard and North 6th Street. City traffic signals, which control travel on both streets, were also operating normally at the time of the incident. The crew aboard the train included Richard Perot, Albert Spivey, and B.G. Gul-lette. Perot was the conductor, Spivey was the brakeman, and Gullette was the engineer. Gullette was seated on the right hand side of the cab. Spivey was seated to Gullette’s left, and Perot was seated behind Spivey. As the train approached the intersection, its headlights were on, its [2bell was ringing, and its air horn was activated. According to all involved, the train was traveling very slowly at about ten miles per hour.
When Danna arrived at the intersection of North 6th Street with DeSiard, he encountered a red blinking traffic signal. He stopped at the intersection, at which time the train crossing lights activated. To his right, Danna saw the KCS train approaching. Believing there was ample time to cross the intersection ahead of the train, he proceeded to go through the intersection. At the same time, King was approaching the intersection in a westerly direction along DeSiard. Facing King at the intersection was a yellow blinking traffic signal and the red blinking crossing lights. As King traveled along DeSiard, he observed the slow-moving KCS train to his left and heard it sound its whistle. King, who also believed there was ample time to cross the intersection ahead of the train, proceeded through the intersection without stopping. As King crossed the tracks, his vehicle struck the rear of Dan-na’s jeep, causing it to spin off the road and stop adjacent to the tracks, face-to-face with the oncoming train.
As the accident occurred, the occupants of the train noticed a commotion ahead involving a vehicle spinning amid dust clouds. Spivey and Gullette activated the emergency brakes. Spivey observed Dan-na’s vehicle adjacent to the track and got up from his seat to exit the cab with the intent of helping the occupant of the automobile. Perot, who was seated behind Spivey, looked up when he heard Spivey holler and saw Danna’s spinning vehicle. Perot recognized Danna as someone he knew and observed the “terrified” look on Danna’s face as the train approached. Perot rose from his seat to follow Spivey out of the cab. As Spivey stepped through the threshold of the door, he saw Danna’s vehicle and realized that the train would not stop before hitting the vehicle. Spivey backed through the doorway, bumping into Perot, who was immediately behind him, and slammed the door of the cab shut. Unfortunately, Perot’s right hand was caught in |Rthe door and his three middle fingers were crushed. The train then made contact with Danna’s vehicle, nudging it away from the track. After traveling approximately 90 feet, the train stopped.
Three separate suits were filed as a result of the incident, along with a number of incidental demands, not all of which are mentioned here. First, King filed suit against Danna and Safeco Insurance Company (“Safeco”), Danna’s insurer. Danna filed a reconventional demand against King and State Farm Mutual Automobile Insurance Company (“State Farm”), King’s insurer. Second, Perot filed suit against Danna and King, along with their respective insurers, alleging that his injury was caused by the automobile collision between these two parties. The two cases were consolidated by order of the trial court on November 12,1996. After a third party demand by King and State Farm named Albert Spivey and KCS as third party defendants from whom contribution was sought, Perot amended his petition to name KCS as an additional defendant. *762 Third, KCS filed suit against King and Danna and their respective insurers for the sum of $15,336.68, representing property damage in the amount of $259.31 and payments to Perot of wages and medical expenses totaling $15,077.37. KCS’s suit was consolidated with the others. In subsequent amendments to his petition, Perot also named as defendants Glazer Wholesale Drug Company of Shreveport (“Glazer”), the employer of Stanley King, and its insurer, Travelers Indemnity Company of Illinois (“Travelers”), as well as the City of Monroe. Perot also asserted additional claims against KCS based upon an unrelated incident that occurred November 11, 1995, when Perot fell after a piece of pulpwood lodged under the rail of the train-car caused the car to kick up in a rocking motion.
Danna and Safeco filed a motion for summary judgment seeking the dismissal of the claims against them. The motion was denied. Glazer and Travelers filed a motion for summary judgment contending that King was not in|4the course and scope of his employment at the time of his collision with Danna and that no coverage was afforded under the policy in effect when the incident occurred. King and State Farm responded with their own motion for summary judgment contending that King was in the course and scope of his employment as a liquor salesman for Glazer at the time of the incident. The trial court determined that King was in the course and scope of his employment with Glazer at the time of the incident. Accordingly, the motion of Glazer and Travelers was denied and that of King and State Farm was granted, thereby making Glazer and Travelers vicariously liable for any damages attributable to King’s negligence.
The matter was set for a bifurcated bench trial with the issue of fault to be determined first. Claims against the City of Monroe, which were based upon allegations that the traffic signal controlling the intersection of DeSaird and North 6th Street malfunctioned, were dismissed at the close of Perot’s case by a directed verdict. The trial court denied a motion for a directed verdict by KCS. Additionally, all claims between Danna and King were settled and dismissed between the close of the trial and the due date for the submission of post-trial briefs. The issue remaining before the trial court was the fault of the parties for the injuries sustained by Perot.
In a written ruling, the trial court found KCS solely at fault for the hand injuries sustained by Perot on January 19, 1996. The trial court rejected the sudden emergency defense asserted by KCS. Although the trial court found that the presence of Danna’s jeep by the track was an obstruction which gave rise to the possibility of a collision and created an emergency situation, the trial court did not find that the situation was sufficient to excuse the negligence of Spivey, KCS’s employee. The trial court noted that the emergency brakes had been activated, the train was moving at an extremely slow rate of speed, and the area in front of the train was clearly visible from the cab in which Spi-vey, Perot, and Gullette were Useated. There was no apparent danger of derailment, explosion, or flying debris as the train neared Danna’s vehicle. The trial court found that Spivey’s first duty was to ensure the safety of the train and its crew, as opposed to offering some undefined assistance to the occupant of a vehicle which was going to experience a minimal impact, if any at all. Spivey owed a duty to Perot, his co-employee, to be aware of his movements. He breached that duty by slamming the heavy door on Perot’s hand after bumping into him. The trial court concluded that had Spivey simply remained seated and ridden out the minimal impact *763 with Danna’s vehicle, there would have likely been no injury to Perot.
After rejecting KCS’s sudden emergency defense and finding the actions of Spi-vey negligent, the trial court went on to assess the fault of Danna and King. Applying the duty/risk analysis, the trial court determined that both Danna and King violated La. R.S. 32:171, and thereby breached then- duty, by proceeding through the intersection ahead of the train when it was not safe to do so. The trial court further determined that the collision between King and Danna was a cause-in-fact of Perot’s injury. The trial court believed that “but for” the collision involving Danna and King, Spivey would not have left his post as brakeman to exit the cab, and Perot would not have attempted to follow him. Although the trial court determined that the duty, breach, and cause-in-fact elements were satisfied, the trial court did not find the same as to the legal cause element. The trial court determined:
(T)here is no “ease of association” between the occurrence of an intersectional collision leaving one vehicle near the railroad tracks and an accident on board a train traveling slowly some distance away, where a train crew member stands up, goes outside on the front of the train to view the accident and possibly render assistance, changes his mind, walks backward into the interior of the cab and in doing so, jostles his co-worker, fails to react, continues backing into the cab and slams his co-worker’s hand in the door of the cab. This particular’ risk is not foreseeable from the standpoint of the drivers.
Based upon this finding, the trial court concluded that KCS was solely at fault in causing Perot’s hand injury. Lastly, the trial court rejected Perot’s claims relating |fito the November 11, 1995 incident upon finding the record insufficient for a determination of whether he received a compen-sable injury on that date.
Judgment in accordance with the written ruling was rendered on February 1, 2000, decreeing KCS solely at fault in causing hand injuries to Perot and dismissing all other claims. Following this judgment, Perot filed motions for amendment of the judgment and for judgment notwithstanding the verdict due to language in the judgment limiting his claim for damages against KCS to his hand injury only. Perot also filed a motion for a new trial as to the denial of his claim against KCS for the November 1995 incident. The trial court denied the motions pertaining to any change in the language of the judgment, but granted the motion for a new trial as to the November 1995 incident for purposes of argument only at the damages phase of the case. Appeals followed.
On appeal, KCS argues that the trial court erred in its analysis of the sudden emergency doctrine and the principles of legal fault. KCS further argues that the trial court erred in finding it solely liable for Perot’s injuries and in rejecting its claim for damages against King and Danna and their respective insurers. Perot argues on appeal that the trial court erred in finding no fault on the part of Danna and King for his injuries and in limiting his claim for damages to his hand injury only. Finally, in the event of reversal of the trial court’s finding of liability, Glazer and Travelers appeal the summary judgment finding King to have been in the course and scope of his employment at the time of the collision with Danna and thereby finding coverage by Travelers.
DISCUSSION
An appellate court may not set aside a trial court's factual findings in the absence of manifest error or unless such findings are clearly wrong. Stobart v. *764 State Through DOTD, 617 So.2d 880 (La.1993). Reversal requires the appellate court to find from the record that no reasonable factual basis exists for the trial |7court’s findings and that the trial court’s findings are clearly wrong or manifestly erroneous. Id. The issue to be resolved is not whether the trier of fact was right or wrong, but whether its conclusion was a reasonable one. Stobart v. State Through DOTD, supra; Miller v. Keal, 29,564 (La.App.2d Cir.5/7/97), 694 So.2d 569, writ denied, 97-1751 (La.10/13/97), 703 So.2d 620. Causation and allocation of fault are questions of fact that may not be reversed absent a showing of manifest error. Underwood v. Dunbar, 628 So.2d 211 (La.App. 2d Cir.1993), writ denied, 94-0026 (La.2/25/94), 632 So.2d 767; Coleman v. Rabon, 561 So.2d 897 (La.App. 2d Cir.1990), writ denied, 567 So.2d 617 (La.1990). When the trial court’s factual findings are reasonable in light of the entire record, an appellate court may not reverse even if convinced that it would have weighed the evidence differently. Where conflict exists in the testimony, reasonable evaluations of credibility and inferences of fact should not be disturbed on review. Stobart v. State Through DOTD, supra.
The claim for damages asserted by Perot is premised upon La. C.C. art. 2315, which provides, “Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” To prevail on a negligence claim asserted under La. C.C. art. 2315, the plaintiff must satisfy the five elements of the duty/risk analysis. The plaintiff must prove: (1) the defendant had a duty to conform his conduct to a specific standard of care; (2) the defendant breached the duty by failing to conform his conduct to the appropriate standard; (3) the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries; (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries; and (5) the plaintiff suffered actual damages. Mathieu v. Imperial Toy Corporation, 94-0952 (La.11/30/94), 646 So.2d 318; Jackson v. Scott Truck and Tractor, Inc., 31,933 (La.App.2d Cir.5/5/99), 736 So.2d 987. Failure to satisfy | sany one of these elements results in a finding of no liability. Jackson v. Scott Truck and Tractor, Inc., supra.

Liability of KCS

KCS argues that the trial court erred in finding it solely liable to Perot for any damages he sustained as a result of the incident of January 19, 1996. KCS believes that it should be exonerated from any fault in the incident by application of the sudden emergency doctrine. As argued by KCS, the collision between Danna and King created an unexpected and dangerous situation, necessitating application of the train’s emergency brakes and resulting in a potentially dangerous situation with little time to react.
Under the sudden emergency doctrine, one who finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or the best means to adopt to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection appears to be the better method, unless the emergency is brought about by his own negligence. Hickman v. Southern Pacific Transport Co., 262 La. 102, 262 So.2d 385 (La.1972); Jackson v. Scott Truck and Tractor, Inc., supra; Traweek v. Jackson, 30,248 (La.App.2d Cir.2/25/98), 709 So.2d 867; Jackson v. Town of Grambling, 29,198 and 29,199 (La.App.2d Cir.2/26/97), 690 So.2d 942. The rationale for the doctrine is that a person confronted with a sudden emergency, who does not have sufficient time to weigh and consider the best means to *765 avoid an impending danger, should not be held to the same standard of control, care, and caution as someone who has ample time to fully exercise judgment and reason. Whiddon v. Hutchinson, 94 2000 (La.App. 1st Cir.2/28/96), 668 So.2d 1368, writ denied, 96-0731 (La.5/10/96), 672 So.2d 923, and cases cited therein. Application of the doctrine is warranted regardless of whether the defendant claiming the defense is the person in imminent peril or whether it is another person whom the 19defendant recognizes as being in a position of imminent peril. Id. The doctrine does not apply when an individual has placed himself in a position of peril or could have avoided the impending danger. De Los Reyes v. USAA Casualty Insurance Co., 28,491 (La.App.2d Cir.6/26/96), 677 So.2d 668.
In ruling on this issue, the trial court found that the presence of Danna’s jeep near the railroad track was an obstruction, which created an emergency situation which had the potential of causing a collision. We agree with this finding. The trial court went on to conclude that the sudden emergency doctrine was not applicable. Factors considered by the trial court included the activation of the emergency brakes, the slow speed of the train, and the visibility from the cab of the locomotive. The trial court concluded that Spivey knew there was no danger of derailment or explosion due to the slow speed of the train. Had Spivey simply remained seated and ridden out the impact, then no injury to Perot’s hand would have resulted. The trial court determined that Spivey’s actions, even in light of the emergency situation created by the presence of Danna’s vehicle near the track, were negligent. Based on our review of the record pursuant to the manifest error standard, we cannot agree with this conclusion.
Spivey, who was in position as the brakeman in the cab of the train, saw a commotion occur in the train’s path. Spi-vey explained that when the vehicular collision occurred, the position of the train in relation to it was “right on top of it” and “right there .” He estimated the distance to be perhaps 180 feet or three engine lengths away. He testified that “everything happened so fast” and in “just a few seconds.” In response to the collision in the train’s path, Spivey and Gullette, the engineer on board, put the train into emergency. The record indicates that placing the train in emergency is in itself a serious event, regardless of the speed of the train. The train, which was going an estimated speed of ten miles per hour, began to slow down. Desiring to help those involved in the vehicular collision, Spivey | inopened the door of the cab. As he proceeded to step over the threshold, he saw the position of Danna’s vehicle in relation to the track and realized that the train would not stop before impact with it. According to his testimony, Spivey stepped back into the cab while slamming the door shut, all at the approximate time of the train’s collision with Danna’s vehicle.
Perot did not see the collision between Danna and King occur. His first awareness of a problem was when he heard Spivey holler, at which point Perot threw aside the paperwork that he was doing and saw a vehicle spinning in the dust and then rolling back toward the tracks. According to Perot, Spivey put the train in emergency and then went to step out of the cab. Perot recognized the occupant of the vehicle, Danna, and saw the terrified look on his face as the train approached. Wanting to help Danna and expecting the train to stop prior to impact, Perot followed right behind Spivey. He testified that they were rushing out. Spivey then jumped back, bumping Perot and slamming the door on his hand. According to Perot, *766 everything happened within a few seconds. King’s testimony likewise indicates that the events unfolded within five or six seconds.
After close inspection of the record, we find that the collision between Danna and King, which occurred ahead of an approaching train and resulted in Danna’s vehicle obstructing the railroad track, created an emergency situation to which the train crew immediately reacted without time for cool reflection. Both the trial court’s ruling and the arguments of counsel opposing KCS relate the events that occurred in such a manner as to suggest that minutes elapsed from the time of the collision between Danna and King and the approach of the train. The record and common sense dictates that the total events likely unfolded in a very brief span of time. The collision involving Danna and King occurred as the train approached the intersection. Reactions of the train’s crew were in immediate response to the accident before them.
InThe immediate reaction of the train’s crew to the emergency situation created by Danna and King was to activate the train’s emergency brakes and then proceed to exit the cab in an attempt to help the victim of the vehicular collision. Upon realizing that the train would not stop before a collision with Danna’s stranded automobile, Spivey retreated into the cab of the locomotive, injuring Perot in the process. In retrospect, it would have been more reasonable for Spivey and Perot to ride out the collision by remaining seated until the train stopped, rather than try to exit the cab in an effort to help Danna. However, the actions taken by Spivey at the time of the accident, even if found to have been something less than the best course of conduct when viewed subsequent to the accident, cannot be considered negligent in light of the sudden emergency created by the collision involving King and Danna. That the train crew did not expect an explosion in the event of a collision with the vehicle near the track does not remove this situation from the purview of the sudden emergency doctrine. It is the unanticipated hazard which is the foundation for invoking the sudden emergency doctrine. Whiddon v. Hutchinson, supra. Here, the vehicular collision resulted in an unanticipated hazard which surely posed the possibility of injury to the train crew or injury to Danna, the occupant of the vehicle. Spivey’s conduct in response to the emergency confronting the approaching train was not negligent when viewed under the doctrine of sudden emergency. Accordingly, we reverse that portion of the trial court’s judgment finding KCS liable for the injuries sustained by Perot.

Liability of Danna and King

Perot argues that the trial court erred in failing to assess liability for his injuries to Danna and King. In its ruling, the trial court applied the duty/risk analysis to determine whether King and Danna were at fault in causing Perot’s injuries. The trial court first found that both King and Danna violated La. R.S. 11?32:171 by failing to stop at the railroad grade crossing and remain stopped until it was safe to proceed.[1] These actions by King and Dan- *767 na satisfied the duty and breach elements of the analysis. Additionally, the trial court found that the negligence of Danna and King was a cause-in-fact of Perot’s injuries. The trial court reasoned that “but for” the vehicular collision, Spivey and Perot would not have left their seats to exit the locomotive. We agree with these findings of the trial court which are fully supported by the record.
Motorists have a jurispruden-tially and statutorily imposed duty to yield to an oncoming train. Goodwyne v. People’s Moss Gin, Inc., 96-1340 (La.App. 3d Cir.4/30/97), 694 So.2d 1101, writ denied, 97-2041 (La.11/21/97), 703 So.2d 1309. Both King and Danna were ticketed for failure to yield. Both admitted at trial to proceeding through the intersection even though the railroad signal lights were flashing red and the train was approaching. Additionally, drivers of automobiles are under a constant duty to maintain a proper lookout and to see what should be seen. Jackson v. Scott Truck and Tractor, Inc., supra; Thissel v. Commercial Union Insurance Company, 476 So.2d 851 (La.App. 2d Cir.1985), writs denied 479 So.2d 361 (La.1985) and 479 So.2d 366 (La.1985). Although violation of a statute constitutes negligence per se, to be actionable, such negligence must be the legal cause of the accident. Miller v. Keal, supra.
With regard to the legal cause inquiry, the trial court found that the vehicular collision was not a legal cause of Perot’s injuries as there was no “ease of association” between the occurrence of the collision and “an accident on board a |13train traveling slowly some distance away.” The trial court did not find the risk that a • member of the train’s crew would slam his co-worker’s hand in a door under the circumstances presented to be foreseeable from the standpoint of the drivers. We find this determination to be clearly wrong.
Determination of legal cause requires inquiry into the scope of the duty breached. It is a policy question as to whether a particular risk falls within the scope of the duty. Morrison v. Kappa Alpha PSI Fraternity, 31,805 (La.App.2d Cir.5/7/99), 738 So.2d 1105, review denied, 99-1668 (La.9/24/99), 747 So.2d 1120, 99-1607 (La.9/24/99), 749 So.2d 634, and 99-1622 (La.9/24/99), 749 So.2d 635. Stated another way, the inquiry focuses on the ease of association between the plaintiffs harm and the defendant’s conduct. The ease of association inquiry encompasses the idea of foreseeability, but is not based on that factor alone. Holloway v. Midland Risk Ins. Co., 33,026 (La.App.2d Cir.5/15/00), 759 So.2d 309, citing Roberts v. Benoit, 605 So.2d 1032 (La.1991). That a risk may foreseeably arise from certain conduct, does not mean that the risk falls within the scope of the duty. That a risk may not be foreseeable does not mean that it is excluded from the scope of the duty. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). Seldom does a rule, whether legislative or jurisprudential, protect every victim against every risk. Instead, rules of conduct (or duties) are designed to protect some persons under some circumstances against some risks. Id. The question to be answered on a case by case basis is whether the particular duty breached is designed to protect the injured party under the particular circumstances presented against the risk incurred.
In this instance, we must determine whether the duty breached by King and Danna in failing to yield to the oncoming train was meant to protect Perot, the con *768 ductor of the train, from the risk of injury when the train crew reacted in response to the vehicular collision in their path and the presence of an automobile 114stranded adjacent to the tracks. Contrary to the trial court’s finding, we find clearly present in these facts an ease of association between the negligence of King and Danna and the resulting injury to Perot. The train crew reacted immediately in response to the scene before them. Spivey and Gullette activated the emergency brake and then Spivey, followed by Perot, proceeded to exit the cab to assist the perceived victim of the vehicular collision. At the cab’s door, Spivey saw that the train would not stop before hitting Danna’s vehicle, which was adjacent to the track. Spivey backed into the cab and slammed the door shut, injuring Perot, who was right behind him. As previously discussed, this occurred as the train hit Danna’s vehicle.
It is foreseeable that, in response to a vehicular collision and a stranded automobile in its path, an approaching train would put on its emergency brakes in an effort to avoid the obstruction. It is also foreseeable that crew members might immediately respond to the vehicular collision by rushing to the assistance of the perceived victims, when conditions would seem to permit such action. Additionally, it is certainly foreseeable that some injury might occur on board the train during the chaotic process of reacting to the vehicular collision. We have no difficulty in finding an ease of association between the resulting injury to Perot and the vehicular collision between King and Danna. These defendants proceeded through an intersection in the path of an oncoming train and in complete disregard of functioning railroad crossing signal lights which were flashing red. Although both King and Danna testified that they were not trying to beat the train and that they believed they had ample time to safely cross the tracks, their actions in light of the surrounding circumstances and the resulting incident indicate otherwise. As a policy consideration, individuals who violate crossing laws and then get into an accident which obstructs the path of an oncoming train, should bear the consequences of their actions. The dangers of collisions involving trains are too | ¶ ¿well known. For these reasons, we find that Perot has satisfied the legal fault element of the duty/risk analysis. Danna and King were equally at fault in causing the injuries sustained by Perot. Accordingly, we reverse that portion of the trial court’s judgment finding no liability on the part of Danna and King. We hereby assess Danna and King each with fifty percent of the fault for the damages sustained by Perot, which are to be proven in the next phase of this bifurcated trial. Having determined that King and Danna were at fault in causing injuries to Perot, we likewise find they were at fault in causing any property damage to KCS and reverse that portion of the trial court’s judgment dismissing KCS’s claim for such damage.

Other Matters

Perot raises on appeal the issue of the trial court’s limitation of his claim for damages to injury to his hand only. Because this phase of trial was limited to a determination of fault only, no evidence was introduced regarding the extent of damages sustained. Therefore, we amend the trial court’s judgment to remove any reference limiting damages to particular injuries sustained. Whether any compensable injuries have been sustained by Perot is to be determined in the damages phase of the trial.
Finally, Glazer, the employer of Stanley, King, and its insurer, Travelers, answered the appeal to seek review, in the event of reversal of the trial court’s liability determination, of a summary judgment finding *769 that King was in the course and scope of his employment at the time of the accident. Although we have reversed the trial court’s finding of liability and now find that King was at fault, along with Danna, in causing Perot’s injuries, we believe that the issue presented by Glazer and Travelers regarding vicarious liability should be raised after a final judgment resolving all issues is rendered in this matter. All rights are reserved to Glazer and Travelers to allow subsequent review of this matter.
Jj^CON CLUSION
For the reasons set forth, we reverse the trial court’s judgment finding Kansas City Southern Railway Company one hundred percent at fault in causing the injuries sustained by Richard Perot in the accident that occurred on January 19, 1996, and in finding no fault on the part of Stanley King and Anthony Danna. We hereby find Stanley King and Anthony Danna to be equally at fault in causing the injuries sustained by Perot in the aforementioned incident and assess liability at fifty percent to each. The same determination is made with regard to any property damage to be proved by KCS in the damages phase of trial. Finally, we amend the trial court’s judgnent to reflect no limitation on the damages allegedly sustained by Perot as a result of the incident occurring January 19, 1996. Costs are assessed equally between Anthony Danna and Stanley King. This matter is remanded for further proceedings.
REVERSED, AMENDED, AND REMANDED.

. La. R.S. 32:171 provides in relevant part:
A. Whenever any person driving a motor vehicle approaches a railroad grade crossing under any of the circumstances stated in this Section, the driver of such vehicle shall stop within fifty feet but not less than fifteen feet from the nearest rail of such railroad, and shall not proceed until he can safely do so.
See also La. R.S. 32:175(A), which requires motorists to yield the right of way to any approaching train at railway grade crossings, and then proceed only upon exercising due *767 care and upon being sure that it is safe to do so.