796 So.2d 765 (2001)
Betty Ruth Grissom DAVIS, Plaintiff-Appellee,
v.
Lee R. SMITH, et al, Defendants-Appellants.
No. 35,117-CA.
Court of Appeal of Louisiana, Second Circuit.
October 2, 2001.
*767 Provosty, Sadler, deLaunay, Fiorenza & Sobel, by Albin A. Provosty, John D. Ryland, Alexandria, Counsel for Appellants, Clarendon National Ins. Co., James T. Gentry, Inc. and Lee R. Smith.
James M. Johnson, Minden, Counsel for Appellee, Betty Ruth Grissom Davis.
Before NORRIS, STEWART and KOSTELKA, JJ.
STEWART, J.
In this wrongful death action, the jury rendered a verdict allocating sixty percent of the fault to the decedent, Richard D. Davis, and forty percent of the fault to the defendant, Lee Smith. The jury awarded total damages of $135,150 to the decedent's widow, Betty R. Davis, the plaintiff herein. After the plaintiff filed a "Motion for Additur," the trial court increased the award of damages. Both parties now appeal. Because our review of the record under the manifest error standard convinces us that the jury erred in finding negligence on the part of either the decedent or the defendant, Lee Smith, we now reverse the jury's verdict.

FACTS
Around 12:30 a.m., on Sunday, May 28, 1995, Richard D. Davis was traveling south in a small pick-up truck along a rural, unlit section of U.S. Highway 79 in Claiborne Parish when he collided with a large tree limb that had fallen across the highway. The force of the collision turned Davis' truck sideways and buried it under the branches of the large limb, which measured approximately 90 feet in length.
Davis' collision was witnessed by Terry Sanders, who was traveling south along U.S. Highway 79 behind Davis. Davis had passed Sanders' vehicle in the last passing zone before the area where the accident occurred. However, Sanders did not believe that Davis was speeding. Sanders noted that it had been rainy and stormy the night of the accident. Sanders stopped his vehicle about two car lengths away from the accident scene and exited his vehicle after turning on his flashers. Sanders saw something shining, but he was not sure whether it was the tail-light of Davis' truck or the reflection of the headlights on his own vehicle. Sanders noted that Davis' truck was covered with limbs. As Sanders started toward Davis, he noticed the interior light of Davis' truck as Davis opened the door and began to exit his truck. At the same time, Sanders heard the "roar" of an approaching 18-wheeler. He hollered at Davis. Sanders testified at trial that "everything started happening real fast," as he heard the 18-wheeler start braking and as he began to back away from the scene and get back to his own vehicle. According to Sanders, the 18-wheeler jack-knifed and "ran off" into the limb as Davis made it out of his truck.
The 18-wheeler involved in the accident was driven by Lee R. Smith, an employee of James T. Gentry Trucking. Smith was on his second trip of the day from Shreveport to El Dorado, Arkansas to pick up a *768 load of chickens. Smith had slept eight to twelve hours before making these trips, and he had spent about three hours resting at home between the two trips. Additionally, he had conducted a thirty minute inspection of his rig before leaving on the second trip. No problems were found. Smith was driving a 1992 Peterbilt tractor with an attached trailer measuring almost ninety feet in length. He was traveling north along U.S. Highway 79; thus, Smith came from the direction opposite that of Sanders and Davis. Smith said that the road was wet and that there had been a shower or two in the area of the accident. He noticed a little steam rising off the road; however, he stated that this did not affect visibility. He testified that he was not speeding. Smith said that he came around a curve and across a bridge just prior to the accident. He first noticed the limb in the road as he came off the bridge. He testified that he did not see any lights or vehicles. Smith stated that he applied the brakes as soon as he saw the limb and that he jack-knifed the truck to avoid running directly into the limb.
Officer Russell Taylor of the Louisiana State Police investigated the accident after being notified that a tree was in the road. He arrived on the scene and found Davis' body in the branches of the limb in front of his pick-up truck. He believed that Davis was hit by the 18-wheeler driven by Smith. Officer Taylor noted that the tree limb covered the entire roadway. He also noted that the road was still damp from a previous rainfall. Although he initially testified that the lights on Davis' pick-up truck were still on when he arrived on the scene, Officer Taylor later testified that the pick-up truck's headlights were knocked out when the truck hit the limb. He did indicate that the truck's interior light may have been on when he arrived. Officer Taylor testified that no traffic violations were issued and that the primary factors contributing to the accident were the presence of the limb on the road and the lack of lighting along the highway.
Dr. Donald Haynes, the coroner of Claiborne Parish, viewed Davis' body at the scene of the accident. Dr. Haynes determined that Davis died instantly. He attributed cause of death to "multiple injuries due to a motor vehicle accident."
Davis' widow, Betty Davis, filed the instant wrongful death action against Smith, James T. Gentry, Inc., Clarendon National Insurance Company, and the State of Louisiana through the Department of Transportation and Development. Suit against the state was dismissed on an exception of no cause of action. This dismissal is not at issue on appeal. A jury trial was held on the claims against the other defendants in October 1999. The jury returned a verdict allocating forty percent of the fault to Smith and sixty percent of the fault to Davis. The jury awarded $30,000 in damages for loss of love and affection; $100,000 in damages for past loss of support; and $5,150 for funeral and ambulance expenses. No damages were awarded for future loss of support. Following the jury's verdict, the plaintiff filed a "Motion for Additur" seeking an increase in damages for loss of love and affection and an award for future loss of support. The trial court granted the motion in part, increasing the damages for loss of love and affection to $150,000. The trial court also assessed all costs to the defendants. This appeal followed.

DISCUSSION
Defendants appealed the judgment against them, and the plaintiff answered the appeal. Both assert error in the jury's finding of fault. The defendants argue that there was no showing of negligence on the part of Smith and that either the unavoidable *769 accident or sudden emergency doctrine should apply. The plaintiff argues that one hundred percent of the fault should be assessed against the defendants. Although other errors were also urged on appeal, our finding as to the issue of fault precludes the need for us to address the remaining issues.[1]
The jury's findings of fact are entitled to great deference and may not be overturned unless they are manifestly erroneous. Reversal is warranted when there is no reasonable basis for the factual findings and when the findings are clearly wrong. Guillory v. Insurance Company of North America, 96-1084 (La.4/8/97), 692 So.2d 1029; Stobart v. State, Through DOTD, 92-1328 (La.4/12/93), 617 So.2d 880. The manifest error rule also applies to our review of allocations of fault. Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607; Barnes v. Reed, 32-380 (La.App.2d Cir.10/29/99), 743 So.2d 936.
In applying the manifest error standard of review, the issue to be resolved is not whether the trier of fact was right or wrong, but whether its conclusion was a reasonable one. Stobart v. State, supra. When the factual findings are reasonable in light of the entire record, an appellate court may not reverse even if convinced that it would have weighed the evidence differently. Where conflict exits in the testimony, reasonable evaluations of credibility and inferences of fact should not be disturbed on review. Id.
When an appellate court makes a finding of manifest error on the part of the trier of fact, the appellate court must decide the case de novo, provided the record is otherwise complete. Rosell v. ESCO, 549 So.2d 840 (La.1989); Otto v. State Farm Mutual Automobile Insurance Company, 455 So.2d 1175 (La.1984).
To prevail on a negligence claim, the plaintiff must satisfy the five elements of the duty/risk analysis by proving that (1) the defendant had a duty to conform his conduct to a specific standard of care, (2) the defendant breached the duty by failing to conform his conduct to the appropriate standard, (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries, (4) the defendant's conduct was a legal cause of the plaintiff's injuries, and (5) the existence of actual damages. Mathieu v. Imperial Toy Corporation, 94-0952 (La.11/30/94), 646 So.2d 318; King v. Danna, 34,397 (La.App.2d Cir.4/04/01), 784 So.2d 757.
Drivers of automobiles are under a never ceasing duty to maintain a proper lookout and to see what should be seen. Thissel v. Commercial Union Insurance Company, 476 So.2d 851 (La.App. 2d Cir.1985), writs denied, 479 So.2d 361 (La.1985) and 479 So.2d 366 (La.1985); Jackson v. Scott Truck and Tractor, Inc., 31,933 (La.App.2d Cir.5/5/99), 736 So.2d 987. Even though a motorist may assume that the road ahead is safe for travel, he must, when traveling after darkness, or in circumstances of impaired visibility, observe and so control his vehicle as to avoid discernible objects in the path of travel; that is, in adverse conditions, a greater degree of care must be exercised. This rule is subject to the well-established exception *770 that a night driver is not charged with the duty of guarding against unusual or unexpected obstructions which he had no reason to anticipate he would encounter on the highway and which, under the circumstances are difficult to discover. Jackson, supra; Clark v. Natt, 32,548 (La. App.2d Cir.12/8/99), 748 So.2d 584, writ denied, 00-0084 (La.3/17/00), 756 So.2d 1142; Lara v. Knotts, 33,429 (La.App.2d Cir.6/21/00), 764 So.2d 241.
Applying the above standard of care to the case sub judice, it is evident that the presence of the large tree limb on the highway was an unusual and unexpected obstruction, which the drivers had no reason to anticipate would be encountered and which was difficult to discover in the darkness of the unlit, rural highway. Furthermore, although Davis and Smith were driving in darkness and in rainy conditions, there is no evidence that they failed to exercise an appropriate degree of care while driving in these conditions. There was no indication that either Davis or Smith were speeding. There was no indication that they should have seen the limb in the highway in sufficient time to stop their vehicles before colliding into the limb. Smith testified that his visibility was not affected and that he began applying his brakes as soon as he saw the limb as he came off the bridge. He even jackknifed his rig in an effort to prevent a head-on collision with the limb. There was also no proof that Smith should have seen lights from the vehicles on the opposite side of the limb or that he should have seen them in sufficient time to stop his vehicle. Davis' truck was buried in branches and leaves. Officer Taylor testified that the headlights of Davis' truck were knocked out at the time of the initial collision with the limb. Additionally, Sanders' vehicle was parked on the road some distance away from the limb.
The plaintiff attempted to prove that Smith had sufficient time to stop his rig before impact and that he failed to do so. This attempt was based on two pieces of testimony. The first was Smith's deposition testimony that he could stop within 150 feet if traveling 45 miles per hour on a flat, level road in dry conditions. This deposition testimony does not take into account that the accident occurred on a dark, rural highway with wet or damp road conditions and in response to an unexpected obstruction. The second was the testimony of Lavelle Penix, a highway maintenance specialist with the Department of Transportation, whose job it is to regularly inspect all highways in Claiborne Parish. Penix testified, over the defendant's objections, that the distance from the tree limb to the north edge of the bridge was 300 to 350 feet. Without addressing the assignment of error raised by the defendants as to the admissibility of Penix's testimony, we do not find that this testimony is sufficient to establish by a preponderance of the evidence that Smith could have, but failed to, stop his vehicle in time to avoid the collision. Pennix's testimony was a guess based on his familiarity with the highways in Claiborne Parish. While he may be familiar with the roadways in that area, there was no indication that he ever measured the distance from the area where the limb fell to the bridge or that he had any specific knowledge about distances. It would have been a seemingly simple task for the plaintiff to present the exact measurement of the distance at issue. However, this evidence was not presented. Moreover, the evidence does not establish that Smith had either sufficient time or distance within which to stop his rig in order to avoid the collision.
Our thorough review of the record compels us to conclude that the jury was manifestly *771 erroneous. We find no reasonable basis for the jury's finding of negligence on the part of either Davis or Smith or for its allocation of fault. In fact, the jury's decision in light of the evidence presented at trial is baffling. Our de novo review of the record convinces us that this tragic accident was unavoidable on the part of both drivers.
The doctrine of unavoidable or inevitable accident relieves a person of liability, so long as the person invoking the doctrine shows that he was in no way to blame for the happening. Seals v. Morris, 410 So.2d 715 (La.1981); Nalle v. State Farm Fire & Cas. Co., 97-441 (La.App. 3d Cir.10/8/97), 702 So.2d 854, writ denied, 97-2832 (La.2/13/98), 706 So.2d 994; Welch v. State, Dept. of Transp. and Development, 93-1134 (La.App. 3d Cir.5/4/94), 640 So.2d 596, writ denied, 94-1452 (La.9/23/94), 642 So.2d 1293. Quoting 2 Blashfield, Automobile Law and Practice 101.3 (Rev.3d Ed., 1979), the Louisiana Supreme Court in Seals v. Morris, supra, explained the doctrine as follows:
As a corollary of the rule for determining legal responsibility for negligence, if a motorist or other traveler has exercised ordinary care as required by the common law (or the highest degree of care that may be required), and has nevertheless been the occasion of inflicting injury on another, the accident is said to be inevitable, for which no liability attaches. Unavoidable accident is not an affirmative defense but merely negatives negligence.
See also Nalle v. State Farm Fire & Cas. Co., supra; Welch v. State, supra; and Paynes v. Guidry, 576 So.2d 591 (La.App. 4th Cir.1991). Stated another way, the unavoidable accident concept applies when a defendant attempts to show that an accident occurred not because of his negligence, but because of some external force or circumstance over which he had no control. Paynes v. Guidry, supra; Meyers v. Smith, 482 So.2d 60 (La.App. 5th Cir. 1986).
Application of this doctrine is warranted in this instance to negate a finding of negligence on the part of the defendants, as well as Davis. The cause of the accident was, as stated by Officer Taylor, attributable to the presence of the limb on the highway and the darkness. Neither driver had any control over these conditions. Also, as discussed previously, there was no showing that either driver failed to exercise the appropriate standard of care in operating their respective vehicles.
While we sympathize with the plaintiff's loss and regret the financial difficulties that she has encountered, we cannot affirm a verdict that is clearly wrong. Doing so would require us to render a judgment based on assumptions drawn from speculative evidence and would not be based on evidence that preponderates in favor of a finding of negligence. An appellate court shall render any judgment which is just, legal, and proper upon the record on appeal, and it may tax costs against any party to the suit as may be considered equitable. La. C.C.P. art. 2164. Accordingly, we believe that equitable considerations require us to tax each party with his own costs of these proceedings.

CONCLUSION
For the reasons discussed, we reverse the trial court's judgment with each party bearing their own costs of these proceedings.
REVERSED.
NORRIS, C.J., concurs with written reasons.
*772 NORRIS, Chief Judge, concurring with reasons.
I concur with the majority's result; however, on this record, I find that the plaintiff has not proven, by a preponderance of the evidence, that the defendant breached any duty to the plaintiff in this case.
NOTES
[1] The defendants also assigned as error the jury's award of $100,000 for past loss of support, urging that such an award was not supported by the record; the introduction of opinion testimony, over objection, as to distances on the roadway; and the trial court's consideration and granting of the "motion for additur," which they allege was procedurally improper, untimely, and not granted based on the standard of being the lowest reasonable award. The plaintiffs assigned as error, in addition to the allocation of fault, the failure to award damages for future economic support, which she believes should be $520,796.