862 So.2d 381 (2003)
Cynthia SMEBY, Plaintiff-Appellee,
v.
John B. WILLIAMS, Jr., State Farm Insurance Company, Rodney C. Griffin, Defendants-Appellants.
No. 37,845-CA.
Court of Appeal of Louisiana, Second Circuit.
December 10, 2003.
Billy J. Guin, Jr., for 1st Appellants, John Williams, Jr., E.L. Burns Co. and Reliance National Ins.
Donald J. Anzelmo, Monroe, for 2nd Appellant, LIGA.
*382 Robert S. Tew, Monroe, for Plaintiff/Appellee, Cynthia Smeby.
Deal & Cook by Philip T. Deal, Monroe, for Defendants/Appellees, Rodney Griffin and State Farm Mutual.
Cotton, Bolton, Hoychick, & Doughty, L.L.P. by David Paul Doughty, Rayville, for Defendant/Appellee, Rodney Griffin and Intervenor/Appellee, Louisiana Farm Bureau.
Before BROWN, CARAWAY, and MOORE, JJ.
BROWN, C.J.
Defendants, John Williams, Jr., E.L. Burns Co., Inc., and Reliance National Insurance Company/Louisiana Insurance Guaranty Association ("LIGA"), appeal from the grant of summary judgment in favor of defendants, Rodney Griffin, State Farm Mutual Automobile Insurance Company ("State Farm"), and Louisiana Farm Bureau Mutual Insurance Company ("Farm Bureau"). For the following reasons, we affirm.

Factual Background
This is an automobile accident case. The issue presented is whether the trial court erred in finding that Griffin was not at fault in causing the accident. The case was decided on summary judgment, with the facts emerging from the depositions of the parties.
On February 7, 1998, Cynthia Smeby and Rodney Griffin went on a date; the couple were in Ms. Smeby's eight-day-old 1998 Pontiac Trans Am. They drove to the Monroe Civic Center to attend a tractor pull competition. While at the Civic Center, both Griffin and Ms. Smeby drank alcoholic beverages. The two, however, disagreed about Griffin's consumption. Ms. Smeby said that Griffin "probably had four" unspecified drinks, while Griffin said that he had "less than two watered-down Old Charter" drinks. Additionally, Griffin said that he ate two ham sandwiches and some chips before leaving his house. The tractor pull competition lasted about three hours. Griffin claimed that he did not feel any effects from the alcohol he had consumed but that Ms. Smeby was intoxicated when they left the Civic Center.
The couple disagreed about what happened next. Ms. Smeby said that they drove to a nightclub called Trios and that Griffin drank several "Charters with a little bit of Sprite." Griffin said that they did not go to the nightclub and that he had nothing else to drink that night. Griffin said that they went back to Ms. Smeby's house and talked for approximately 45 minutes to 1 hour and 10 minutes.
Eventually the two got back in Ms. Smeby's car with Griffin driving, and they headed east on Interstate 20. Upon entering I 20, they saw a state police car "running fast" and Griffin decided to see where the police unit was going. Ms. Smeby said that Griffin "stomped it" to follow the police car. They were driving in the outside/right lane of the interstate as they approached a tractor-trailer rig. Griffin estimated the truck's speed to be 65 m.p.h. He then pulled the Trans Am into the inside lane to pass the truck. He described the ensuing incident this way:
I had to slow down probably to his speed, 65 (miles per hour), moved over, proceeded to pass. He came over-came over a little bit and I looked over, I mean immediately went as far as I could to the left-hand side and then he came the restas soon as he started coming over, I let off the accelerator. We were moving backwards in a rapid pace and as far over to the left-hand side lane without getting in the grass as we could. Then he proceeded to come on over abruptly as we was moving backwards.

*383 When I lookedas we were moving backwards and as I started to look back over, he was coming over and I jerked the wheel over and he caught us right behind the frontthe door on the right rear quarter panel.
He knocked us in the grass and it was a gradual downhill slope. I say gradual, pretty good slope down into a ravine. The car was out of control. Turned the wheel all the way trying to keep from going into the trees and it would not react and then the tree was there.
Griffin did not brake to avoid the accident. He said:
When I moved over and I let off the accelerator, we were going backwards in a rapid clip. He was passing us and it appeared that he saw us and was going back-you know, was not going back but wasn't coming all the way over on us.
After running off the road, the Trans Am crashed into a tree, injuring both Ms. Smeby and Griffin. The "phantom" tractor-trailer rig that hit Griffin did not stop.
Ms. Smeby said that Griffin was driving at about the speed limit, 70 m.p.h., at the time of the crash but that they were "moving on" and that "70 is not what his intended speed was." She stated that at the time of the crash Griffin was accelerating to catch the state police vehicle but "didn't get a chance" to exceed 70 m.p.h. because the truck hit the car before he could go faster. Furthermore, Ms. Smeby said that she saw nothing that Griffin could have done differently to avoid being hit by the truck.
Although neither Ms. Smeby nor Griffin saw it, another tractor-trailer rig had jackknifed on the road not far ahead of them blocking the interstate highway. The truck evidently jackknifed because the driver, Williams, fell asleep. The distance between the site of the Griffin crash and the jackknifed truck is not given in the record. Along with two other emergency responders, Louisiana State Police Trooper Christopher Towell had gone to the jackknifed accident and then responded to the Griffin accident.
In the trooper's written report of the Griffin accident, he estimated Griffin's speed at 70 m.p.h. because he had no indication that Griffin was going slower or faster than 70 m.p.h. and noted that he may have been going slower because of the emergency vehicles ahead. At the scene of the accident Trooper Towell performed an "HGN" test (horizontal gaze nystagmus test) on Griffin to determine whether he was intoxicated. The trooper said that the results revealed "Probably nothing," and "If it had been anything, I would have probably wrote something on my report about it." The trooper said that he wrote "drinking, not impaired" for Griffin. The evidence in the record does not indicate what, if any, damage was done to Ms. Smeby's car. The excerpt from the trooper's deposition in the record does not reflect any discussion of damage done by the phantom truck.[1]

Procedural Background
On October 6, 1998, Ms. Smeby sued Griffin; Griffin's liability insurer, State Farm; Williams, the driver of the jackknifed truck; Burns, Williams' employer; and Reliance, Burns' insurer. On February 8, 1999, Griffin brought a cross-claim against Williams. On August 10, 1999, Ms. Smeby amended her petition to substitute LIGA for Reliance after learning of Reliance's insolvency. On August 27, 1999, Farm Bureau, Ms. Smeby's auto insurer, *384 brought an intervention action against Williams, Burns, and Reliance.
General denial answers were filed by all defendants; however, Williams answered the original and supplemental petitions specifically pleading the comparative fault of Griffin as a defense.
On November 18, 2002, Griffin, State Farm, and Farm Bureau filed a motion for summary judgment, arguing that Griffin was not at fault for the accident. They specifically argued that Griffin's drinking was not a legal cause of the accident, that Griffin never exceeded the speed limit, and that Griffin was not negligent. Attached to the motion were excerpts from the depositions of Ms. Smeby, Griffin, and Trooper Towell.
On January 13, 2003, LIGA/Reliance, Williams, and Burns filed an opposition, urging that there were several material facts in dispute, including the amount of alcohol Griffin had consumed and the effect it had on his driving, Griffin's speed, other actions immediately prior to the accident, and whether Griffin's failure to brake to avoid the collision was negligence. Ms. Smeby did not oppose the motion for summary judgment as, apparently, she had settled with Griffin and his insurer.[2] The opponents attached excerpts from the depositions of Griffin and Ms. Smeby to their opposition. On February 19, 2003, the trial court granted summary judgment in favor of Griffin, State Farm, and Farm Bureau. The January 17, 2003, minute entry from the day summary judgment was granted states:
The Court will grant the Motion for Summary Judgment for the reasons set forth in the motion itself. The Court reviewed the opposition brief filed but under the Code of Civil Procedure Article 966, more is needed than argument. There must be something to support that argument that was made and there was nothing in the record.
This appeal filed on behalf of Williams, Burns, and Reliance/LIGA ensued.

Applicable Legal Principles
Appellate courts review summary judgments de novo. Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181, 99-2257 (La.02/29/00), 755 So.2d 226. Summary judgment is properly granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B).
A fact is "material" when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success or determine the outcome of the legal dispute. King v. Career Training Specialists, Inc., 35,050 (La.App.2d Cir.09/26/01), 795 So.2d 1223.
The mover has the burden of establishing the absence of material fact. If the mover will not bear the burden of proof at trial on the matter, then he is required to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim or action. La. C.C.P. art. 966(C)(2). Once done, the opponent must produce factual support to avert the summary judgment. Whether a particular fact in dispute is material can be assessed only in light of the substantive law applicable to the case. Allen v. State *385 Farm Fire and Casualty Company, 36,377 (La.App.2d Cir.09/18/02), 828 So.2d 190, writ denied, 02-2577 (La.12/19/02), 833 So.2d 343.
The party opposing summary judgment cannot rest on the mere allegations of his pleadings, but must show that he has evidence which could satisfy his evidentiary burden of proof at trial. A determination of the credibility of such evidence is not generally applicable in summary judgment proceedings. If he does not produce such evidence, then there is no genuine issue of material fact, and the mover is entitled to summary judgment. La. C.C.P. art. 966(C)(2); Johnson v. Entergy Corporation, 36,323 (La.App.2d Cir.09/20/02), 827 So.2d 1234.

Discussion
The only issue presented in the motion for summary judgment and this appeal pertains to Griffin's negligence.[3] Because Griffin's negligence is the question, his conduct is subject to the duty-risk analysis. Boykin v. Louisiana Transit Co., Inc., 96-1932 (La.03/04/98), 707 So.2d 1225. At issue is whether Griffin breached his duty to drive in accordance with the law. A motorist's duty of care includes the duty to keep his vehicle under control and to maintain a proper lookout for hazards. Williams v. City of Monroe, 27,065 (La. App.2d Cir.07/03/95), 658 So.2d 820, writs denied, 95-1998, 95-2017 (La.12/15/95), 664 So.2d 451, 452. A motorist must use such diligence and care in the operation of his vehicle as is commensurate with the circumstances. Edwards v. Horstman, 96-1403 (La.02/28/97), 687 So.2d 1007.
Griffin's argument is essentially that there was nothing he could have done to avoid the accident. If a motorist has exercised ordinary care as required by law (or the highest degree of care as may be required) and has nevertheless inflicted injury on another, the accident is said to be inevitable, for which no liability attaches. Davis v. Smith, 35,117 (La.App.2d Cir. 10/2/01), 796 So.2d 765, writ denied, 01-2887 (La.01/25/02), 807 So.2d 250.
The only witnesses to the accident whose accounts of the event were considered on summary judgment were Trooper Towell, Ms. Smeby, and Griffin. Ms. Smeby's version of events, as evidenced by the brief excerpts from depositions attached to the motion and opposition to summary judgment, differs in several respects from Griffin's. The most significant difference in their accounts is in their description of Griffin's actions immediately prior to the crash. Griffin said that he was slowing the car at the time of the crash while Ms. Smeby said that he was going 70 m.p.h. and accelerating to catch the emergency vehicle speeding ahead of them when the truck they were passing swerved over and hit them.
While we recognize that Griffin was ill-advised in pursuing the emergency vehicle, there is no evidence in the record tending to show that his actions breached his duty of care. Even accepting Ms. Smeby's account that Griffin was traveling at the speed limit but accelerating at the time of the accident, there is no proof that this conduct was reckless or negligent under the circumstances. Specifically, no evidence suggests that Griffin was not in control of the vehicle or that passing the truck was anything but an ordinary maneuver. Even Ms. Smeby agreed at her deposition that the crash was unavoidable.
Opponents suggest that Griffin should have braked the Trans Am when he first saw the phantom vehicle moving into *386 his lane. Under Louisiana's sudden emergency doctrine, a person "who finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or the best means to adopt to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to be the better method, unless the emergency is brought about by his own negligence...." Clark v. Natt, 32,548 (La.App.2d Cir.12/08/99), 748 So.2d 584, writ denied, 00-0084 (La.03/17/00), 756 So.2d 1142. Although the witnesses gave differing versions of Griffin's actions, both agreed that there was nothing that Griffin could have done differently to avoid the crash.
There was no evidence presented in opposition to summary judgment to suggest that Williams' jackknifed truck and the attendant emergency vehicles were visible from the scene of the instant accident. One theory why the phantom truck swerved into Griffin's lane and struck Ms. Smeby's car is that the phantom driver was trying to avoid the jackknifed truck parked across the road ahead. In the absence of evidence that Griffin should have seen this hazard, Griffin was within his rights to pass the truck that he said was going slower than the speed limit.
Finally, we find little significance in the evidence that Griffin had been drinking prior to the crash. Although the witnesses again gave differing accounts of how much alcohol Griffin had to drink before the crash, the relevant inquiry is whether his alcohol consumption impaired his driving. In light of the testimony from Trooper Towell who performed the HGN test on Griffin and found nothing worthy of inclusion in his report, the opponents have presented no evidence that Griffin was impaired at the time of the accident.

CONCLUSION
Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellants, John Williams, Jr., E.L. Burns Co., Inc., and Louisiana Insurance Guaranty Association.
AFFIRMED.
CARAWAY, J., dissents with written reasons.
CARAWAY, J., dissenting.
I respectfully dissent in the opinion of the majority because of the unusual procedural posture of this case which requires dismissal of the appeal.
There are two claims left remaining in this suit. Smeby, the plaintiff, maintains a claim against appellants, Williams, Burns, and Reliance. Griffin has a cross-claim solely against Williams. The appellants raised the affirmative defense of Griffin's joint negligence against Smeby's claim. Similarly, Williams raised the affirmative defense of Griffin's comparative fault against Griffin's claim.
The motion for summary judgment in this case was initially directed at Smeby's claim against Griffin and not at the affirmative defenses of the appellants. The rule to show cause was directed solely at the plaintiff, and the trial court's judgment only dismissed Griffin as a defendant, reserving his cross-claim against Williams. Griffin has no claim against Burns and Reliance and could file no motion for summary judgment against them. Yet, Burns and Reliance interpose themselves as appellants seeking to reverse the judgment in favor of Griffin.
Pursuant to La. C.C.P. art. 966(E), the trial court could grant partial summary judgments in favor of Griffin and Smeby, dismissing the affirmative defenses of comparative fault and joint negligence asserted against their respective claims.
*387 Yet, Smeby neither moved for summary judgment nor has such a judgment in this appeal. The appellants broadly interpreted Griffin's motion for summary judgment as extending to all of them and their affirmative defenses. In fact, the appellants alone, and not Smeby, presented opposition evidence to Griffin's motion for summary judgment. They alone have appealed, although the judgment in favor of Griffin cannot extend to Burns and Reliance, who have not been sued by Griffin.
Although I agree with the majority that a partial summary judgment could have been rendered on the evidence presented to dismiss Williams' affirmative defense, the written judgment does not so indicate. Since Williams clearly opposed and defended against the motion for summary judgment as though it was directed at his affirmative defense, I am also tempted to affirm the subject silent judgment as a partial summary judgment. Nevertheless, the same issue raised by Williams, Burns and Reliance against Smeby has not been adjudicated by judgment in Smeby's favor, thus allowing for the possibility of inconsistent judgments on the issue of Griffin's liability. If there is additional evidence of Griffin's actions or inaction which raises material issues of fact, Burns and Reliance, and arguably Williams, can still raise those facts in defense of Smeby's claim. When such a relationship between the adjudicated claims and unadjudicated claims remains, the rendition of partial summary judgment was not proper by the trial court and clearly should not be considered as a final appealable judgment. Banks v. State Farm Ins. Co., 30,868 (La.App.2d Cir.3/5/98), 708 So.2d 523. The appeal of this unspecified, uncertified judgment should be dismissed.
NOTES
[1] The motion for summary judgment states that the trooper found damage to Ms. Smeby's car, but the cited portion of the trooper's deposition is not included in the record.
[2] No settlement or release appears in the record although counsel for Ms. Smeby notified this court of the settlement by letter after the record was lodged.
[3] Williams, Burns, and LIGA only opposed the summary judgment motion. They did not file any motion for summary judgment on their behalf.