961 So.2d 597 (2007)
Cynthia SMEBY, Plaintiff-Appellee
v.
John B. WILLIAMS, Jr., State Farm Mutual Automobile Insurance Company, and Rodney C. Griffin, Defendant-Appellant.
No. 42,163-CA.
Court of Appeal of Louisiana, Second Circuit.
June 27, 2007.
*598 The Aubert Law Firm, by Christopher Joseph Aubert, James Philip Meyer, Covington, for Appellants, John B. Williams, Jr., E.L. Burns Co., Inc. and Paccar Leasing Corporation.
Robert Stephen Tew, Monroe, for Appellee, Cynthia Smeby.
Cotton, Bolton, Hoychick & Doughty, by David Paul Doughty, Rayville, for Appellee, Louisiana Farm Bureau Mutual Insurance Company.
Philip Thomas Deal, for Appellees, Rodney C. Griffin & State Farm Mutual Automobile Insurance Company.
Before STEWART, DREW and LOLLEY, JJ.
DREW, J.
John Williams, E.L. Burns Co., Inc., and Paccar Leasing appeal a judgment in which Williams was found solely at fault for an automobile accident between a phantom truck and a sports car carrying Cynthia Smeby and Rodney Griffin. We amend the judgment to allocate 40% of fault to the phantom truck driver, and affirm the amended judgment.

FACTS
John Williams was employed as a truck driver for E.L. Burns Co., Inc. ("Burns"). Late in the evening of February 6, 1998, Williams began a journey driving a tractor hauling a flatbed trailer from Shreveport to the East Coast.[1] As Williams drove through Ouachita Parish eastbound on I-20 shortly after midnight, he lost control of his truck when he looked down to see what he had dropped onto the floor of the tractor.[2] The truck went off the right side of the road and jackknifed, leaving the tractor blocking the outside lane and part of the inside lane, and the trailer stuck in the mud alongside the interstate. The point along I-20 where the truck stopped was described by Williams as being on the incline of a hill.[3] Two Ouachita Parish Sheriff's deputies arrived in their patrol cars and parked behind the truck, with their lights flashing. Williams estimated that these deputies arrived within five minutes of his accident.
Louisiana State Trooper Christopher Towell received a call about Williams's stranded truck. Towell, who was east of Williams's truck, drove westbound on I-20, exited I-20 at Cheniere Road, entered eastbound I-20, and then proceeded to the scene of the jackknifed truck. Towell estimated that Williams's truck was located approximately 1.2 miles east of the Cheniere entrance ramp. Towell parked his patrol vehicle behind the deputies' cars. Williams thought Towell arrived five minutes after the deputies. Williams was ticketed for careless operation.
Cynthia Smeby and Rodney Griffin were on a date the evening of February 6. After attending a Monster Truck show at the Monroe Civic Center, where they consumed alcoholic beverages, the couple went to Smeby's home.[4] According to *599 Griffin, the couple then left Smeby's house in West Monroe to go to Griffin's house in Monroe. Smeby recalled that they left her house to go to another bar. As Griffin drove Smeby's recently-purchased Trans Am on the Cheniere Road overpass crossing I-20, he saw an emergency vehicle with lights flashing heading eastbound on I-20 and decided to follow it.
Griffin entered eastbound I-20 and accelerated to the speed limit of 70 mph. He steered the Trans Am to the inside lane in order to pass an 18-wheeler in the outside lane. After the Trans Am had passed about half of the 18-wheeler, the truck began moving into the inside lane without activating his turn signals. Griffin took his foot off the accelerator and steered the Trans Am as far to the left as he could go without going onto the grass. Griffin and Smeby had slightly different recollections of what happened next. Griffin recalled that after the truck had moved halfway into the inside lane, it stopped moving to the left momentarily, but then suddenly came completely into the inside lane and made contact with the Trans Am. Smeby recalled that the truck came into the inside lane, went back into the outside lane, and then came back completely into the inside lane and knocked the Trans Am off the road. In any event, the Trans Am entered the median and collided with a tree, resulting in moderate injuries to Griffin and Smeby. The driver of the phantom 18-wheeler never stopped his vehicle.[5]
When Towell learned of the Griffin crash, he went to that site to assist. He performed a nystagmus gaze test on Griffin and did not think Griffin was impaired. Towell estimated that there was a distance of 300 to 400 yards from where the Trans Am left the roadway to the location of Williams's truck.
Smeby filed suit against Griffin, his liability insurer State Farm, and Williams. Griffin filed a cross-claim against Williams. Smeby amended her petition to add Burns and its insurer, Reliance National Insurance Company.[6]
Smeby's insurer, Farm Bureau Mutual Insurance Company, filed a petition for intervention against Williams, Burns, and Reliance. Farm Bureau alleged that it had paid approximately $57,890 to Smeby and Griffin in medical payments, collision payments, and UM coverage payments under its policy.
Griffin, State Farm, and Farm Bureau filed a motion for summary judgment against Smeby on the ground that Griffin was not at fault in causing the accident. Smeby did not oppose the motion as she had settled with Griffin and Farm Bureau. However, Williams, Burns and Reliance/LIGA opposed the motion for summary judgment. The trial court granted the motion and dismissed Griffin, State Farm, and Farm Bureau as parties, with Farm Bureau reserving its rights to a subrogation claim and Griffin reserving his demands as plaintiff. This court affirmed the judgment in Smeby v. Williams, 37,845 (La.App. 2d Cir.12/10/03), 862 So.2d 381.
Following a bench trial on the merits, judgment was rendered in favor of Smeby and Griffin and against Williams, Burns, *600 and Paccar Leasing.[7] The trial court concluded that when Williams fell asleep at the wheel of his truck, that set in motion a chain of events which created a sudden emergency for the phantom truck that caused the accident involving Smeby's vehicle. Accordingly, Williams was found 100% at fault for the accident. Smeby was awarded $50,000 plus medical damages, and Griffin was awarded $40,000 plus medical damages. The court also found that Farm Bureau was entitled to $50,000 for its subrogation claims against Williams, Burns, and Paccar Leasing, consisting of $25,742.38 in property damages, $10,000 in medical payments, and $14,257.62 in UM payments. Williams, Burns, and Paccar Leasing appeal.

DISCUSSION
Appellants' only contention is that the trial court erred in assigning all of the fault for the Trans Am accident to Williams and none of the fault to the phantom truck driver.[8] In its reasons for the judgment, the trial court noted that the phantom truck driver encountered a sudden emergency as a result of Williams's truck blocking part of eastbound I-20.
In Clark v. Natt, 32,548, pp. 2-3 (La. App. 2d Cir.12/8/99), 748 So.2d 584, 586, writ denied, XXXX-XXXX (La.3/17/00), 756 So.2d 1142, this court discussed the sudden emergency doctrine:
Under the sudden emergency doctrine, one who finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or the best means to adopt in order to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to be the better method, unless the emergency is brought about by his own negligence. Said another way, if a motorist has exercised ordinary care as required by law (or the highest degree of care as may be required), and has nevertheless inflicted injury on another, the accident is said to be inevitable, for which no liability attaches.
Citations omitted.
La. R.S. 32:141(C) states, "[t]he driver of any vehicle left parked, attended or unattended, on any highway, between sunset and sunrise, shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence."
Williams claimed that after his truck left the road, he set out three reflective triangles, one 100 feet behind the truck, one beside the truck, and one 100 feet ahead of the truck. Towell did not remember seeing the reflective devices that Williams claimed he had set out. Towell commented, "The only thing there was his cab lights and stuff were illuminated, but that was it."
Williams stated that after his truck was stranded, he left the engine running and his headlights and taillights on, with the headlights pointing at a northeast angle, so they were facing away from eastbound traffic. Towell thought the front of Williams's cab was facing the inside lane, with the headlights pointing toward the median. The hazard lights were on, as were five amber clearance lights on top of the cab.
*601 The tractor and trailer both had some reflective qualities. The turn signal lights also acted as reflectors. There were three small reflectors along the front, middle, and rear of a metal side beam on the trailer, and there were small reflectors on the back of the trailer. Williams admitted that the center and rear of the trailer would have been off of the shoulder, with the front of the trailer on the shoulder. The tractor was white, and the trailer was red.
Towell estimated that Williams's truck was located approximately 1.2 miles east of the Cheniere entrance ramp. Towell described the Cheniere entrance as being on a slight rise, and at the top of the hill, he could see the flashing lights from the deputies' patrol cars. However, Towell also stated that he could not see Williams's truck until he topped the last hill before it. According to Towell, Williams's truck was located slightly up the incline of a hill. Towell did not remember any lighting in the area.
An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong, and where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Cole v. Department of Public Safety & Corrections, 2001-2123 (La.9/4/02), 825 So.2d 1134; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Cole, supra; Rosell v. ESCO, 549 So.2d 840 (La. 1989). To reverse a fact finder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Stobart, supra.
Based upon our review of this record, we conclude that the trial court was clearly wrong in assigning all of the fault for the accident involving the Trans Am to Williams. It is without doubt that Williams set the chain of events in motion by allowing his tractor-trailer to become jackknifed in the first place. However, because the phantom truck driver is not available to testify as to the circumstances leading up to his decision to abruptly change lanes, the sudden emergency doctrine is not available to cleanse him of his liability in causing the Trans Am to leave the interstate and enter the median.
We acknowledge that even under the best of circumstances, it would have been difficult for a driver in the oncoming eastbound traffic to know exactly what danger was awaiting him on I-20 after the Cheniere Road entrance. Nevertheless, when the phantom truck driver passed the Cheniere entrance, he would have been approximately 1.2 miles from Williams's truck and still going up an incline. At that moment, he most certainly would have been aware of the night sky being lit up from the flashing lights of three patrol cars. Although he would not have known the reason for the presence of emergency vehicles, or more importantly, where these emergency vehicles were located, he was under a duty to proceed cautiously and slow to a safe speed as he approached the unknown danger ahead.
Towell estimated that it was approximately 2/10ths of a mile from the top of the last hill to where Williams's truck was located on the next hill. At that point, the phantom truck driver would have had visible confirmation of the exact danger *602 ahead, i.e., the lane in which he was driving was blocked.[9] However, if the phantom truck driver had proceeded cautiously up until that point, he would have been in a better position to stop his vehicle or to merge safely into the inside lane.[10]
Based upon our review of the record, we conclude that Williams was 60% at fault for the accident involving the Trans Am, and that the phantom truck driver was 40% at fault. The judgment is amended to reflect these percentages of fault.

DECREE
With each party to bear its own costs, the judgment is AMENDED, and as AMENDED, AFFIRMED.
NOTES
[1] E.L. Burns Co., Inc., leased the truck from Paccar Leasing Corporation.
[2] Williams denied that he told State Trooper Chris Towell that he had fallen asleep at the wheel.
[3] Williams described these hills as long and sloping.
[4] Smeby claimed that Griffin drank four beers at the truck show, and then had several mixed drinks at a bar, Trio's, which they visited before going to Smeby's house. Griffin stated that he drank one mixed drink at the truck show, and the couple never went to Trio's before going to Smeby's home. Smeby testified that Griffin had told her after the accident not to tell anyone that he had been drinking because he did not want his insurance to be affected.
[5] Griffin testified that the rear wheels of the trailer struck the right rear quarter panel of the Trans Am. A photo of the Trans Am taken at the accident scene shows white paint on the body above the rear wheel on the passenger side. Towell believed that the white paint was from the phantom truck.
[6] The Louisiana Insurance Guaranty Association was substituted as a defendant in place of Reliance after Reliance was placed in receivership.
[7] Although Paccar Leasing had not been named as a defendant in the suit, by stipulation it agreed that it was a defendant as to all claims brought by Farm Bureau, Griffin, and Smeby without the necessity of being named in the suit.
[8] The issue of Griffin's liability was resolved in the earlier judgment granting the motion for summary judgment, which this court affirmed.
[9] The outside lane was blocked not only by Williams's truck, but also by the three patrol cars which were apparently parked one behind the other in the outside lane.
[10] The phantom truck driver never activated his turn signals before merging into the inside lane.